(Opinion published 52 N. W. Rep. 531.)

---

WM. W. CARGILL et al. vs. EDWARD THOMPSON et al.

Argued May 31, 1892. Decided June 15, 1892.

Complaint Construed.

The complaint in this action, which was brought to recover for damages said to have resulted from a failure on the part of the lessors to observe and keep the conditions and covenants in two leases of water power, considered, and held to state facts sufficient to constitute a cause of action against each of several defendants.

Appeal by defendants, Ara D. Sprague, Edward Thompson, and Orinda Thompson, his wife, from an order of the District Court of

Houston County, *Farmer*, J., made November 28, 1891, overruling their demurrer to the complaint.

The plaintiffs, William W. Cargill and Samuel D. Cargill, brought this action, stating in their complaint that on April 27, 1872, the defendants Thompson and wife owned a dam and water-power at Hokah on Root River, and leased to White Brothers for twenty years (with right of renewal) the exclusive right to use therefrom 7,505 cubic feet of water per minute at a six foot head, they to pay $500, yearly rent. That on April 8, 1879, Thompson and wife made another lease to the Whites for the same period, with right of renewal, increasing the right to water to 10,000 cubic feet under an eight foot head, they to pay an additional rent of $10 per horse power, per year. That in these leases the Thompsons agreed to keep the dam reasonably tight and of sufficient height to produce a head of not less than eight feet of water at the flume of the mill, and to construct and keep in repair the head race and clean it out from time to time. That they did not warrant the supply of water in the river. That White Brothers on September 22, 1881, assigned both leases and all their rights thereunder to the plaintiffs. That on March 4, 1886, Thompson and wife conveyed the property to the defendant Sprague, subject to the rights of the lessees, and that plaintiffs thereafter paid to him and he received the rent.

The complaint further stated that plaintiffs used the water to propel their flouring mill at Hokah. That the mill had a capacity of 250 bbls. per day; that the defendants failed to keep the dam at a sufficient height and reasonably tight and in repair, and failed to keep the head race clean, whereby they sustained great inconvenience and injury to their flouring business; and they asked $25,184 damages.

*M. P. Wing* and *H. R. Wells*, for appellants.

*Losey & Woodward* and *W. H. Harries*, for respondents.

COLLINS, J. This was an action brought to recover for damages said to have resulted from a violation of certain conditions and a breach of certain covenants found in two contracts or leases of water power,—one dated in April, 1872; the other, which is really

supplemental to the first in its general nature, bearing date about seven years afterwards. In these instruments the defendants Thompson (husband and wife) were the lessors, and White Bros. the lessees. These plaintiffs claim to have lawfully succeeded to the rights and interests of the original lessees by means of various sales, transfers, and assignments. Each of the defendants demurred to the complaint upon the ground that as to him it failed to state facts sufficient to constitute a cause of action, and this appeal is from an order overruling these demurrers. The complaint is necessarily quite long, and we are of the opinion that its contents will be sufficiently stated while considering appellants' assignments of error.

By the first the point is raised that the pleading is insufficient as to defendant Sprague, because "no such privity in the property in said defendant is alleged as should obligate him for repairs in the absence of an express covenant." The averments in the complaint in respect to Sprague are that on March 4, 1886, the defendants Thompson made, executed, and delivered to him their certain deed of conveyance of the water power and premises in question, subject to the leases and contracts for the water power then held and owned by the plaintiffs; that said defendant then had full and actual notice of all of the conditions and covenants therein contained; that thereafter, and up to September 30, 1890, the plaintiffs allowed and paid to him the rent as provided in the leases and contracts, all of which was duly accepted. It also alleges the recording of the deed in the proper county after delivery to Sprague. The contention is that it nowhere appears that the latter has succeeded to the rights and estates held by the Thompsons, or that he has become the absolute owner of the power and premises, and as such owner has accepted rents, so that the conditions and covenants found in the leases would rest upon and conclude him. The complaint does not aver in positive language that Sprague has purchased the property, or that he became the absolute owner of it by the delivery of the deed; but it does allege the making, execution, and delivery of a deed of conveyance in which the Thompsons were the grantors and Sprague the grantee, and that this deed was thereafter duly placed upon record. It also alleges that this deed was

made subject to the leases; that Sprague had actual knowledge of the conditions and covenants therein; and that thereafter, for a period of more than four years, he received the rents paid by plaintiffs under the leases, thereby accepting them as his tenants.  The allegations in respect to Sprague's rights and interests in the water power and premises might have been made more specific, but it very clearly appears, we think, that he has succeeded to the entire estate formerly owned by the Thompsons, and is the owner in fee of the same; and also that he has accepted from the plaintiffs and retained the benefits accruing from the leases with full notice and knowledge of their conditions and covenants.  This being a fair construction of the allegations of the pleadings, the burdens and obligations assumed by the original lessors through the conditions and covenants found in their contracts fall upon Sprague, and he can be compelled to respond in case of breach or violation of the same, provided it has also been made to appear by the complaint that the plaintiffs have lawfully acquired the rights and title formerly held by the original lessees.  That they have is adequately shown.  The leases (which are not independent instruments, but are connected, and must be construed together) and the written assignments of each are set out in full as part of the complaint.  In connection with the allegations in respect to the sale, transfer, and assignment to plaintiffs, these exhibits are sufficient to establish, as a matter of pleading, that all of the rights and interests secured to the White Bros. when they obtained the leases have been properly conveyed to the plaintiffs, and that the right to use the stipulated amount of water, and to enforce the conditions and covenants of both instruments, have been transferred; so that beyond doubt there existed privity of estate between the parties hereto.  The right to maintain this action against the present owner of the power and premises, defendant Sprague, seems complete without considering the allegations from which it appears that he has expressly acknowledged the plaintiffs as lawful successors of the original lessees by accepting and appropriating the rentals paid by them under the leases for more than four years.

By means of the second assignment of error it is urged in support

of the demurrer of each of the defendants that "the lease provides for maintaining a standing head of eight feet, or its equivalent; while the complaint contends for an operating head, and does not charge that, in the absence of such a head, its equivalent was not furnished as provided." The first of these leases stipulated for the exclusive right to the use of 7,505 cubic feet of water per minute at a six-foot head, with a provision for the benefit of an increased head of water should it be raised to eight feet. Among the covenants of the lessors was one to forever maintain the dam at a height and the race way in a condition to produce a head of seven feet, with the water in the stream at an ordinary stage. In the second lease it was agreed conditionally that an additional quantity of water was to be furnished sufficient to make in all 10,000 cubic feet per minute under an eight-foot head, or its equivalent under such head as the lessor might have. We have said that this agreement was conditional. The lessors expressly stated that they did not warrant the supply of water under all circumstances; but, referring to the earlier lease between the same parties, and the first right thereunder to use 7,505 feet of water, and the right of another mill to then use a certain quantity, and also to the right of another mill to then use another certain quantity, stipulated that the lessees should then have the preference over all others to use the amount before mentioned as being in addition to that provided for in the first lease. But, among other things, it was expressly covenanted in this second lease that the lessors should keep the dam at a sufficient height to produce a head of water of not less than eight feet, measuring from the tail race of the lessees' mill to the water in the lessors' canal immediately above the flume of the mill, and at the lowest stage of water. It was also covenanted that the dam should be kept reasonably tight. By the allegations of the complaint it has been made to appear that there has been a willful and negligent breach of these conditions and covenants, in consequence of which the plaintiffs have sustained damages, the nature and amount of the same being fully detailed. The dam, it is averred, has not been kept reasonably tight; the north end has been allowed to get out of repair, and to settle, so that it drains water from the race used by plaintiffs; it has not been main-

tained at the height required by the leases; and that thereby the plaintiffs have been deprived of a sufficient quantity of water, although the supply in the stream has at all times been ample, and the provisions of the leases could have been complied with. That the defendants have failed to furnish the "equivalent" of 10,000 cubic feet per minute is not positively asserted, but it is alleged that the supply of water stipulated for was sufficient to operate plaintiffs' mill at its full capacity; that there has not been sufficient for such purpose, because the defendants have allowed the canal to fill up and to be in such a condition as to greatly reduce the supply of water required in and by the leases, and that the defendants have continually failed and neglected to repair and fix the dam so as to produce the head of water or the quantity of water required and to be furnished under the leases. These are distinct and substantive averments of fact, charging defendants with violations and a breach of the conditions and covenants found in the leases. Under these allegations these violations and a breach of these conditions and covenants can be proven if they exist.

As to the third assignment of error, which need not be repeated here, we are of the opinion that, if it were necessary to show in the pleading that plaintiffs are now proprietors of a certain mill, or that the mill operated by them is the mill which was to be provided for, or one of similar capacity, the fact does sufficiently appear.

The fourth and last assignment of error is that "there is no claim in the complaint of default or breach of the provisions in the first lease,—1872. The second lease—1879—stipulates and fixes the measure of damages for breach of its provisions, and limits the same to abatement of rent only. No right of further recovery exists in the plaintiff." In the first lease provision was made for damages resulting to the lessees in case there should be a deficiency of water in the head race, and, should such deficiency happen through the misconduct or willful neglect of the lessors, the lessees were to have the right to recover in an action at law the amount of actual damages sustained by them; while in the second lease, in connection with the conditions for the benefit of the lessors referred to heretofore when discussing the second assignment of error, it was stipulated that, if

there should not be sufficient water to supply the quantity already referred to as reserved, and the additional quantity granted to the lessors by the instrument, "at any time, from any cause whatever," then the rent should abate in proportion to such deficiency during such time and no longer.

We cannot agree with appellants' counsel in their claim that the conditions and covenants in the second lease are inconsistent with those found in the first, so that they cannot subsist together; the latter being discharged and superseded by implication. Nor do we construe the new lease, in respect to the measure of damages, as counsel contend it should be. It is obvious from all of its terms that it was intended by the parties as a contract for additional water power, if the supply in the stream permitted, for an additional compensation or rental. The fixed and binding nature of all of the provisions contained in the contract already in existence was repeatedly and distinctly recognized, and no one could construe or give effect to its various clauses without placing them in close connection, and construing them with the old agreement. The instruments must be read and interpreted together, and when this is done there can be no difficulty in discovering just what was intended, and in giving proper effect to the material provisions of each.

There ought not to be any difference of opinion as to what was intended when in the second lease it was stipulated that, if there was not sufficient water from any cause to supply the quantity theretofore reserved to plaintiffs' assignors (in the first agreement) and to other parties named, and to supply the additional quantity therein contracted for, the rent should abate. The words " sufficient water" referred to the supply of water afforded by the stream, with the covenants in respect to the character and condition of the dam, the canal, and race way, observed and complied with. If the dam was maintained at a proper height, and it and its adjunct kept in the agreed state of repair and free from obstructions, the measure of damages was definitely fixed, no matter what might produce the deficiency of water. Nothing but unequivocal and unambiguous language would warrant the construction put upon this provision by appellants' counsel,—a construction which would subject the lessees

to a total loss of their milling property if the lessors chose to be negligent, although there was an abundance of water at their command. The complaint states a cause of action as to each of the defendants.

Order affirmed.

(Opinion published 52 N. W. Rep. 644.)