## WM. W. CARGILL et al. vs. EDWARD THOMPSON et al.

Argued April 20. 1894.   Reversed June 22, 1894.

No. 8714.

**A mortgagee in possession is not in privity with a lessee.**

A mortgagee in possession of real estate has not an estate which brings him in privity with the lessee under a lease executed by the mortgagor, so as to make him liable to the lessee upon the covenants in the lease.

**Nor is the assignee of the rent if it be taken as security merely.**

An assignee of rents growing out of a lease, assigned to him as security, has not such an estate.

**Expert witness to meaning of a contract.**

Where the construction of a contract is in question, it is error to allow a witness to state how he understands it, or any portion of it.

**A contract construed.**

A covenant in a lease to furnish a specified power of water, to be used in propelling a particular mill of the lessee, gives the lessee the right to the full power specified, though it be more than was necessary to run the mill as it was when the lease was executed. He may increase the capacity of the mill so as to use the specified power.

**Care required to avert injury.**

The rule requiring one exposed to injury through the default of another to use ordinary care and reasonable precaution to avert or lessen the

injury does not require of him to perform the duties in the premises belonging to such other.

Profits as damages.

> Upon a breach of covenant to furnish a specified power of water to propel a mill used in manufacturing flour, the covenantee may recover, as damages, profits which he would have made in the manufacture of flour at the mill, but which he was prevented making by a breach of covenant.
>
> Canty, J., dissenting.

Appeal by defendants Edward Thompson and Ara D. Sprague, from an order of the District Court of Houston County, *John Whytock,* J. made November 24, 1893, denying their motion for a new trial.

The plaintiffs, Wm. W. Cargill and Samuel D. Cargill, complained that defendant Thompson and wife, being the owners of a dam and water power at Hokah on Root River, on April 27, 1872, leased to White Bros. for twenty years, with right of renewal, the exclusive right to use therefrom 7,505 cubic feet of water per minute at a six foot head, they to pay $500 yearly rent. That on April 8, 1879, Thompson and wife made another lease to White Bros. for the unexpired term, increasing the right to water to 10,000 cubic feet of water per minute under an eight foot head, they to pay an additional rent of $10 per horsepower, making $1,050 per year. That in these leases the Thompsons agreed to keep the dam reasonably tight and of sufficient height to produce a head of not less than eight feet of water at the flume of the mill and to construct and keep in repair the head race and clean it out from time to time, but did not warrant the supply of water in the river. That White Bros. on September 22, 1881, assigned both leases, and all their rights thereunder, to the plaintiffs. That on March 4, 1886, Thompson and wife conveyed the property to the defendant Sprague and assigned to him the rents, subject to the rights of the lessees, and that plaintiffs thereafter paid to him and he received the rent; that they used the water to propel their flouring mill at Hokah, known as the Crescent Mill; that the mill had a capacity of 250 bbls per day; that defendants failed to keep the dam at sufficient height and reasonably tight and in repair and failed to keep the head race clean, whereby they sustained great inconvenience and injury to their flouring business

and asked $25,184 damages. The defendants demurred to this complaint but the demurrer was overruled and they appealed but the order was affirmed. *Cargill* v. *Thompson*, 50 Minn. 211. The action was then dismissed as to Orinda Thompson. The other defendants answered severally, stating among other things, that on the date of the conveyance to Sprague, he executed a defeasance to Edward Thompson providing that on his payment of $16,841.26 then owing by him to Sprague, together with six per cent interest and all taxes and expenses he would reconvey to Thompson and reassign the right to the rents. They further answered that plaintiffs had put in new machinery and greatly increased the capacity of the mill and the quantity of water required to run it and that all obstructions in the head race were caused by plaintiff's improper manner of drawing water therefrom and allowing ice to accumulate therein. The plaintiffs replied and the issues were tried May 10, 1893. The plaintiffs had a verdict for $7,500. Defendants moved for a new trial but were refused and they appeal.

*Benton, Roberts & Brown, Wells & Hopp* and *E. H. Smalley,* for appellants.

Sprague was simply a mortgagee, whose only interest in the property was for the purpose of securing the payment of the debt Thompson owed him. He was not liable for breach of covenants of the lease to plaintiffs. And this is true whether he was in possession of the property leased or not. There is no privity of contract between plaintiff and Sprague. The only ground on which Sprague can become liable for a breach of the covenants contained in a lease made by Thompson is, that he comes into an estate in, and title to, the lands themselves by reason of a transfer from Thompson. *Cargill* v. *Thompson*, 50 Minn. 211.

The only question then is, did Sprague, by his deeds and contracts with Thompson, become the purchaser of the land, or acquire a legal estate or title as owner. This deed in connection with the recorded defeasance and the unrecorded agreement which was expressly referred to in the recorded defeasance, constituted Sprague simply a mortgagee. *Holton* v. *Meighen*, 15 Minn. 69; *Everest* v. *Ferris*, 16 Minn. 26; *Benton* v. *Nicoll*, 24 Minn. 221; *Blakeley* v. *Le Duc*, 25

Minn. 448; *Butman* v. *James,* 34 Minn. 547; *Marshall* v. *Thompson,* 39 Minn. 137; *Brinkman* v. *Jones,* 44 Wis. 498; *Scott* v. *Mewhirter,* 49 Iowa 487.

The only cases which can be cited holding a mortgagee liable on covenants in leases upon land conveyed in the mortgage are those from jurisdictions where the mortgagee is still regarded as holding the legal title to the lands. This rule of the mortgagee as owner, is the English common law doctrine and is still adhered to in England and in some American states. *Walton* v. *Cronly's Admr,* 14 Wend. 63; *Kortright* v. *Cady,* 21 N. Y. 343; *Wetherell* v. *Hamilton,* 15 Pa. St. 195; *Johnson* v. *Sherman,* 15 Cal. 287.

In some of the cases just mentioned it is held or implied that a different doctrine might be applied to a mortgagee in possession, receiving the rents. This distinction is on the ruling peculiar to those states in which they still adhere partially to common law rule, that the mortgagee in possession has "an estate in the land." *Teal* v. *Walker,* 111 U. S. 242.

*Pace* v. *Chadderdon,* 4 Minn. 499, has since been expressly repudiated. *Rogers* v. *Benton,* 39 Minn. 39.

In California it is held that the mortgagee of a term in possession as assignee is not liable upon the covenants of the lease on the ground that the mortgage is a mere security and does not vest in the mortgagee any estate in the lands either before or after condition broken. Nor does possession by the mortgagee affect the nature of his interest; it does not change the relation of debtor and creditor or impair the estate of the mortgagor, but leaves the rights and interests of the party exactly as they existed previously. *Johnson* v. *Sherman,* 15 Cal. 287; *Dutton* v. *Warschauer,* 21 Cal. 609; *Jackson* v. *Lodge,* 36 Cal. 28.

The court admitted evidence of the meaning and construction, not of any technical term in the lease, but of considerable portions and clauses of the lease. The admission of this testimony taken as it was, and not confined to technical terms in the lease, but to whole portions of the lease itself, was excepted to by defendants and is of itself sufficient to entitle them to a reversal.

Special damages are only allowed when they may reasonably be supposed to have been contemplated by the parties in making the

contract as the probable result of the breach.   *Wilson* v. *Reedy*, 32 Minn. 256; *Frohreich* v. *Gammon*, 27 Minn. 476; *Goebel* v. *Hough*, 26 Minn. 252; *Cushing* v. *Seymour, Sabin & Co.*, 30 Minn. 301; *Williams* v. *Wood*, 55 Minn. 323; *Simmer* v. *City of St. Paul*, 23 Minn. 408; *Messmore* v. *New York Shot & Lead Co.*, 40 N. Y. 422.

The proper rule of damages is the difference between the rental value of the mill with the covenants fulfilled, and its value when they are not fulfilled for the time in question.   *Winne* v. *Kelley*, 34 Ia. 399; *Fort* v. *Orndoff*, 7 Heisk. (Tenn.) 167; *Pawaukee Milling Co.* v. *Howitt*, 86 Wis. 270; *Duffield* v. *Rosenzweig*, 144 Pa. St. 520; *Great Western Printing Co.* v. *Tucker*, 73 Ia. 755; *Griffin* v. *Colver*, 16 N. Y. 489; *Cassidy* v. *Le Fevre*, 45 N. Y. 562; *Stern* v. *Rosenheim*, 67 Md. 503.

Plaintiffs cannot claim damages without having taken reasonable measures to decrease the amount of such damages.   *Paine* v. *Sherwood*, 21 Minn. 225; *Great Western Printing Co.* v. *Tucker*, 73 Ia. 755; *Fort* v. *Orndoff*, 7 Heisk. (Tenn.) 167.

*Losey & Woodward, Harries & Duxbury* and *E. C. Higbee*, for respondents.

The so called defeasance as well as the unrecorded contract evince an intention of the parties to leave the fee and the possession in Sprague, even as between themselves, and secondly, that as between plaintiffs and Sprague the defendants are neither of them in a position to assert that the title was other than in Sprague.   Upon its face this conveyance was a deed.   Even as to subsequent purchasers the so called defeasance was not intended to operate as a notice that the title was other than in Sprague.   This is evidenced from the fact that it was contemplated that he should make conveyances to purchasers.   The undisputed facts clearly show this transaction a contract to reconvey, leaving the legal title in Sprague, even as between himself and Thompson.   If our contention in this respect is correct, it ends the question of the liability of Sprague, for the covenants in the leases are those which run with the land and bind the grantee thereof by reason of the privity of estate. *Shaber* v. *St. Paul Water Co.*, 30 Minn. 179; *Leppla* v. *Mackey*, 31 Minn. 75; *Trask* v. *Graham*, 47 Minn. 571.

But if we were to concede that this transaction was, as between the parties, intended to leave the title and fee in Thompson, and as between themselves to be regarded as a mortgage, still we contend that as between the plaintiffs and Sprague, he is still liable upon the covenants in these leases because he is estopped as against the plaintiffs to take such a position. As such mortgagee he is shown to have been in the possession, receiving the benefits and emoluments thereof, and as such mortgagee is liable upon the covenants in these leases. The right of the mortgagee to receive, collect and hold rents, by all the authorities, is dependent upon his possession. But the only way to take possession of leased premises is to take the rents. *Chapman* v. *Porter*, 69 N. Y. 276; *Wood* v. *Whelen*, 93 Ill. 153; *Dawson* v. *Drake*, 30 N. J. Eq. 601; *Moffatt* v. *Smith*, 4 N. Y. 126.

The construction of these leases was for the Judge and he so held and withdrew the consideration of them from the jury. The Judge had the right in the consideration of the question to bring to his aid books of science, standard authors and expert witnesses to throw light upon the proper construction to be given to these contracts. Such evidence is permissible for that purpose, even when the question is submitted to the jury. *Merchant* v. *Howell*, 53 Minn. 295.

Defendants contend that the mill of the plaintiffs has been remodelled, so that more power is required for its operation than at the time when the leases were executed. The leases provide for a definite quantity of power to be furnished and the plaintiffs are entitled to utilize it to their greatest advantage.

These facts bring this case within the rule which permits a recovery of profits. *Hinckley* v. *Beckwith*, 13 Wis. 31; *Griffin* v. *Colver*, 16 N. Y. 489; *Goebel* v. *Hough*, 26 Minn. 252; *Fairchild* v. *Rogers*, 32 Minn. 269; *Masterton* v. *The Mayor &c. of Brooklyn*, 7 Hill, 61; *Blanchard* v. *Ely*, 21 Wend. 342; *Wakeman* v. *Wheeler & Wilson M'f'g Co.*, 101 N. Y. 205.

GILFILLAN, C. J. Thompson being the owner of real estate on which was a water power, on Root river, on April 27, 1872, he and his wife executed a lease to E. Vining White and Cyrus A. White of the exclusive right to use from said water power, for twenty years from that date, 7,505 cubic feet of water per minute, at a six-foot head

of water, at stipulated annual rent.    On April 8, 1879, they exe-
cuted to the same parties another lease, of the right to use for twenty
years from the date of the first lease an additional quantity of water,
sufficient to make, including the 7,505 feet, 10,000 cubic feet per
minute under an eight-foot head, or its equivalent under such head as
they may have; the head to be ascertained by measuring from the
tail race of the mill, at its lowest stage of water, to the water in the
canal immediately above the flume or flumes of the mill.    As held
when the case was here before 50 Minn. 211, (52 N. W. 644), the two
are to be construed as one lease, the latter being supplementary to
the former.    The leases were assigned September 22, 1881, by the
lessees to the plaintiffs.    March 4, 1886, Thompson being still the
owner of the property, and being indebted to the defendant Sprague
in the sum of $16,840.26, there were executed three instruments,—
one a deed absolute in form, by Thompson and wife, conveying to
Sprague several pieces of real estate, including the above-mentioned
water power, and including "the right to receive, collect, and hold
all rentals from any and all persons for the use of said property, or
the water power thereon;" another, an instrument under seal, exe-
cuted by Sprague, reciting the above conveyance, and also that the
parties have executed another contract, of the same date, and that
the conveyance was for the purpose of securing the performance on
the part of Thompson of such other contract, and covenanting, upon
its performance, to reconvey to said Thompson the said real estate
and water power, or so much thereof as should not have been con-
veyed, with his written consent, prior to the performance of said
contract.    This instrument was recorded on the 15th, and the deed
on the 14th, May, 1886.    The third instrument was the contract re-
ferred to in the second, and was executed in duplicate by Thompson
and Sprague.    It contained a covenant by Sprague to reconvey to
Thompson, on full performance of the conditions specified on his
part, all the real estate, subject to any changes in the ownership
which might result under the provisions of the contract; to convey
any part of the premises, or to lease any part of the water power, pur-
suant to agreement to sell or lease, which Thompson might sell or
lease,—any rent on a lease not to be below a specified rate,—with
the condition that, if Sprague should deem the price in any such
contract of sale inadequate, he might, at his option, take himself

the tract agreed to be sold at such price, the amount of the price to be applied upon the principal of the debt secured; all proceeds of sales or leases to be paid to Sprague. Thompson also covenanted to pay the debt of $16,840.26 on or before ten years from the date, with interest at the rate of six per cent. per annum, payable annually; to pay all taxes; to keep the buildings insured,—the loss, if any, payable to Sprague, to the extent of his interest. On failure of Thompson to pay the taxes, or keep the buildings insured, Sprague was to have the right to do so. Thompson also covenanted to keep the premises and water power in good condition and repair, ordinary decay, wear, and tear, and injury from unavoidable accident, excepted. It was agreed that, Thompson performing the conditions of the contract, he should have the right to the possession and enjoyment of the premises, except the rental on any leases then or thereafter in force; and, as to those, Sprague was to receive and apply them—First, in payment of taxes, and repayment to Sprague of all sums paid by him for taxes and insurance, with interest from dates of payment; second, to payment of interest on the principal debt; third, any surplus remaining after the above to be held by Sprague as a reserve fund to be used in making repairs necessary from decay, wear, and tear, and unavoidable accident, to be made under the direction of Thompson; fourth, any sum remaining to be applied at the end of each second year in payment of the principal debt; Thompson to be allowed interest on any such surplus from the date of its receipt to the end of each second year at the rate of 6 per cent. per annum.

It was agreed that in case of failure by Thompson to pay the taxes or the interest on the debt within one year after due, or to perform the other conditions of the contract, or to pay the principal sum when due, Sprague might declare the contract closed, and sell the premises at public vendue, after a notice of sixty-days publication in one or more newspapers, and on such sale to convey the premises free from any right of redemption; the proceeds of sale to be applied in payment of costs of sale, of the debt, with interest, and all sums advanced for taxes, insurance, or otherwise; the surplus, if any, to be paid to Thompson, his heirs or assigns.

The plaintiffs insist these instruments evidence a conditional sale.

and not a mortgage. There can, however, be no serious question that the transaction was a mortgage. Though a conveyance be on its face absolute and indefeasible, it is a mortgage, if made as security for performance of something by the grantor, as for the payment of an existing debt. The purpose of this conveyance, as shown by all the instruments, was to secure payment of the debt from Thompson to Sprague. All other covenants, conditions, and stipulations were manifestly only in aid of that purpose; so that had the debt and such sums as, for the purpose of the security, became part of it, been at any time paid, that would have defeated the conveyance, certainly so far as Sprague had not, under the power contained in the instruments, conveyed or leased on sales or leases agreed on by Thompson.

The plaintiffs basing their claim to recover against Sprague on the proposition that he is an assignee of Thompson, so as to be liable on his covenants running with the land, must take the entire transaction just as it was between the parties to it. That the conveyance was, and the instrument setting forth the conditions on performance of which it should be defeated was not, recorded, was no concern of respondents, because their rights in the property are antecedent to the conveyance. They claim no rights under or through or against it, and there can be no estoppel in their favor as to the character of the conveyance, for they have not rightfully done anything in reliance on it as an absolute conveyance.

As mortgagee, merely, Sprague was not liable to the plaintiffs upon the covenants in their lease. The mortgage created no privity between him and them. It passed no estate in the land, but gave only a lien. This has been decided so frequently by this court that we need not cite the cases.

Respondents claim, however, it is different with a mortgagee in possession; that he has such an estate as makes him liable upon the covenants running with the land.

The contract between Thompson and Sprague reserves to the former the right to the possession and enjoyment of the premises, except the rental arising from any lease of the same. The assignment by way of mortgage of such rentals to Sprague, his collecting the same, and his entry upon the premises from time to time to attend

to or make the repairs covenanted for in the contract, are the only things that could go to characterize him as a mortgagee in possession. But we will assume that he was such.

What will constitute a mortgagee in possession was fully considered in *Rogers* v. *Benton,* 39 Minn. 39, (38 N. W. 765,) in which it was said, "The mortgagee must be in possession by reason of the assent or agreement of the mortgagor or his assigns that he have the possession under the mortgage, and because of it." But whether the mortgagee's relations to the title are in any way changed by his being in possession is a question we have never had before us. Upon this question, in the states where the rule is, as in this state, that the mortgage is only a security,—notably, in New York and California,—the courts differ. The courts in New York hold that although, when out of possession, both before and after default, the mortgagee has only a lien, when he is in possession he has an estate, and is liable on the covenants running with the land (*Astor v. Hoyt,* 5 Wend. 603; *Moffatt* v. *Smith,* 4 N. Y. 126), the court in the former case saying: "When the mortgagee takes possession, he then has all the right, title, and interest of the mortgagor. Then he acquires, and the mortgagor loses, an estate liable to be sold on execution." The decisions in that state merely state that to be the case, but contain no reasoning to show how the result is brought about.

In California it is held that the interest of a mortgagee in possession is the same as that of one out of possession (*Johnson* v. *Sherman,* 15 Cal. 287; *Dutton* v. *Warschauer,* 21 Cal. 609), the court in the former case saying: "Nor can possession under the mortgage affect the nature of the mortgagee's interest. It does not abridge or enlarge his interest, or convert what was previously a security into a seisin of the freehold. It does not change the relation of creditor and debtor, or impair the estate of the mortgagor, but leaves the rights and interests of the parties exactly as they existed previously."

We think the decisions of the California court in accordance with the better reason. We do not see how the mere act of the parties, of going into possession, and consenting to or acquiescing in it, can have the effect to pass the mortgagor's estate to the mortgagee. The latter, being let into possession under and because of the mortgage, is in only for the purpose of it, to wit, for security. There can be

no question but that he must account upon the mortgage debt for the net receipts because of the possession, nor but that, the debt being paid, his right to retain possession will, without any other act or ceremony, cease. The fact that the possession is added, as a further security, to the security which the mortgage of the title gives him, cannot change the lien of the mortgage into an estate. The right of the mortgagee remains a mere lien, though the power to enforce it against the profits issuing from the land is placed in his hands by letting him into possession. If an estate arises in the mortgagee, it is real estate, though the debt, of which it is only an incident, is personalty. Can the debt and the right of possession be severed? May the mortgagee assign the debt, as personalty, and retain the right of possession, as realty? In case of his death, will the estate go to the administrator, and the right of possession to the heirs? Or must both go to one, and to which of them?

An estate sufficient to have cast on it the burden of covenants running with the land will entitle the owner of it to the benefit of similar covenants, and *e converso*. In this state a mortgagee cannot, before foreclosure, maintain an action on the covenants in the deed to the mortgagor, though running with the land, because he is not the owner of the land with which such covenants run. We suspect the courts in New York would hesitate to hold that as soon as he gets possession he may sue upon or may release such covenants, which he certainly can do, if he has an estate that makes him the owner of them. We conclude that a mortgagee in possession is not subject to the burdens, nor entitled to the benefits, of covenants running with the land.

What was the effect of Thompson vesting in Sprague, by way of security or mortgage, "the right to receive, collect, and hold all rentals" for the use of the property, including the rentals upon the lease assigned by White Bros. to plaintiffs?

We may assume that an absolute assignment of the rents for the entire term of the lease is in effect an assignment by the lessor of the lease itself, bringing the assignee in privity with the lessee; putting him, for the purposes and term of the lease, in the place of the lessor; subjecting him to the burdens of the covenants on the part of the lessor, and entitling him to the benefits of the covenants on the part of the lessee enforceable during the term. In

such case the assignee is the owner of the rents, and he may do what he will with them,—collect them, accept something else in lieu of them, or release them; and he may, doubtless, accept a surrender of the lessee, except as to those covenants of the lease intended for the benefit of the estate after the term shall expire.

But an assignee of rents by way of mortgage can do none of those things, except to receive the rents, and apply them for the benefit of the lessor, towards satisfaction of his debt. His relation to them is the same as that of the mortgagee of the land towards the legal title,—that of one holding a lien; and, if he can maintain in his own name a suit to collect them, it must be as a trustee. He is not, therefore, an assignee, so as to be liable on the covenants in the lease.

There was no cause of action against Sprague. That, however, does not affect the defendant Thompson. There are various assignments of error which do affect him. There is one which is well founded. The plaintiffs called as a witness a hydraulic engineer, and were permitted to read to him extracts from the lease,—in one instance, as much as two folios,—and to ask him his judgment as to the proper meaning of the clauses; in other words, asked him to construe them. It was not for any witness, but was for the court, to construe them, in connection with the entire lease. If there were "words of art" used, it was proper for an expert witness to state the meaning of such words in the art. Such, for instance, is, in this lease, the term "head of water." As that is a technical term in hydraulics, an expert might give its meaning. And as the clause in the lease, "head of not less than eight feet, measuring from the tail race of said mill, at its lowest stage of water," suggests the question whether this means the lowest operating stage or stage when the water is being furnished to the mill, and it is being operated, or means the stage when the mill is at rest, and but little water is running through the tail race, it was competent for an expert to state the rule, if there were any, for measuring to ascertain the head of water,—whether to measure from the surface of the water in the tail race when the mill is in operation, or to measure from the surface of the water when the mill is at rest. And it was for the court, with such aids, to construe the clause.

Had the construction of the clauses given by the witness been

the one which the court would have been bound to put on them, admitting the witness' construction would have been error without prejudice. The construction of this witness required the measurement to ascertain the head to be taken from the surface of the water in the tail race at its lowest stage when the mill was in operation, and the volume of water to be furnished was passing through. Another witness—a hydraulic engineer—stated (and it ought not to have been permitted, had it been objected to) his understanding of the clause, "lowest stage of water," to be the lowest stage at which it is ever found. And he stated facts important and proper for the court to consider in construing the clauses, which were that measuring from the surface of the water at the lowest stage ever found would give a fixed, or nearly fixed, standard for measuring, while measuring from the surface when the mill is operating would give a variable or shifting standard. Whether the court considered and passed upon the testimony as to these facts, and other testimony bearing on the conditions and circumstances of the subject-matter of the clause, or merely adopted the testimony of the first of these expert witnesses, as establishing its proper construction, we are unable to say, and cannot, therefore, say that admitting his opinion, did not prejudice.

And, *prima facie*, construed by the words alone, the clause means the lowest stage of water at any time, and without reference to whether the mill was running or not, though that apparent meaning might be modified by evidence of the character we have above indicated as proper.

There are many other matters presented by appellants, and, in view of a second trial, we will consider such of them as we think likely to arise on such trial.

The appellants claim that as, by the terms of the leases, the water was to be used in propelling the Crescent Mill,—a mill existing when they were executed,—and as at that time the capacity of that mill was such that it could be successfully operated at a head, say, of six feet, plaintiffs cannot complain for a failure to furnish the excess above that. There is nothing in the claim. The covenant was not to furnish enough water to run the mill in its then capacity, but was absolute,—to furnish 10,000 cubic feet per minute, at an eight-foot head, or its equivalent. Plaintiffs had an absolute right

to that quantity of power, and had the right to enlarge the capacity of their mill till they could use all of it. Of course, if, at any time when the stipulated amount was not furnished, they could not have used it, had it been furnished, that would have gone to the measure of damages.

The question of the proper measure of damages is raised.

In the first place, the appellants contend that the rule of damages, or the redress of the lessees, in case of failure to furnish the stipulated quantity of water, is fixed by the lease. The question on demurrer to the complaint, of which the leases are made a part, was passed on when the case was here before. 50 Minn. 211, (52 N. W. 644.) It was held that the clause in the lease limiting the lessees' remedy to an abatement of rent in case there should not at any time, from any cause whatever, be a sufficient quantity of water to supply the stipulated amount, referred to a case of shortage of water when the dam was maintained at a proper height, and it and its adjuncts kept in the agreed state of repair, and free from obstructions. It follows from that construction of the lease that an action will lie for any damages caused by a failure to supply water through any neglect or omission of the lessor. The right to such damages would not depend on the good or bad faith of the lessor, but solely on his neglect or omission. Where a party to a contract is exposed to injury by neglect of the other party to perform the covenants on his part, the injured party has no right to aggravate the damages, either by affirmative acts, or by the neglect of ordinary care and reasonable precaution to avert or lessen the injury. We have found no case, however, which holds—and the proposition is unreasonable —that the duty of ordinary prudence to lessen the injury extends so far as to require of him to perform the covenants of the other party. Whether, in this particular case, ordinary prudence would have lessened the injury, and to what extent, and whether the party did what it required of him, are questions for the jury.

The principal question, however, on the matter of damages, arose on allowing profits that would have been made while the mill was, for want of water, unable to run. The court permitted the plaintiffs to prove that during that period they either had, or could have procured, wheat to keep the mill running to its full capacity, with 10,000 feet of water at an eight-foot head, or its equivalent; how

many barrels of flour it could make at that capacity, and the profits on each barrel,—and instructed the jury that they might allow such profits lost, as an item of damages.

Taking as the test of the right to recover such profits the second branch of the rule in *Hadley* v. *Baxendale*, 9 Exch. 341, that the injured party has the right to recover such damages "as may reasonably be supposed to have been in the contemplation of both parties at the time they made the contract, as the probable result of the breach of it," now universally approved, the first question is, is it to be reasonably supposed that, when making these leases, both parties had it in contemplation that these profits would, in whole or in part, be lost to the lessees, as the probable result of a breach by the lessor of the covenant to furnish the stipulated quantity of power?

The lessees took the lease for the purpose of engaging in the business of manufacturing flour; the power was leased for that purpose; and both parties knew that if the power were not furnished the business would be suspended or interrupted, and the lessees would consequently be deprived of such profits as might have been made in the business but for the suspension or interruption. And the loss of such profits must have been in contemplation of both, as the probable result of a breach of the covenant to furnish the power. To bring the case within the rule, it was not necessary they should have had in mind the amount of profits, or the extent of the loss from the breach. It was enough that they must have contemplated loss of profits as the result of a breach.

Within the rule stated, the damages sought to be recovered must not be remote, nor speculative, nor contingent, but direct, and shown with certainty to have been caused by the breach. An illustration of too remote damages would have been furnished, had plaintiffs claimed that, in consequence of not receiving the profits on their milling business, they lost profits of other enterprises, which they might have entered on with the profits of their milling business.

In respect to the profits of the business, their loss might appear to have been due to some other cause than failure to supply water to the mill. But, if not due to any other cause, their loss was sufficiently direct. Although the loss is direct, the amount must not be left to speculation or conjecture, but must be proved with reasonable certainty. Absolute certainty, however, is not required.

*Mississippi & Rum River Boom Co.* v. *Prince*, 34 Minn. 71, (24 N. W. 344.)

But, profits lost being allowed as damages, no expenses of keeping and caring for the mill could be allowed, except such as were made necessary by the mill being idle, and as would not have accrued had the mill been running.

Order reversed.

BUCK, J., absent, sick, took no part.

CANTY, J., (dissenting.)  I agree with the majority of the court that, in this case, covenants which run with the land will not run with the rent alone.    Whether such covenants will run with rent alone is a mooted question.    See Wood, Landl. & Ten. § 310.    In the cases in which it has been held that such covenants will run with the rent alone, the assignment of the rent gave the assignee as complete control during the term for which the rent was assigned as the assignor could give him.    It put the assignee in the shoes of the landlord as completely as possible without a conveyance of the reversion.    But the assignment of the rents to come due on the water-power leases in this case did not do so.    It was an assignment of rent issuing out of a mere easement, an incorporeal chattel interest in other respects like an incorporeal hereditament, while the lessor himself still remained in the possession of the estate out of which the incorporeal interest issued.    The lessor, remaining in exclusive possession of such estate, was alone in position to maintain the dam and head race, and keep them in repair, as he covenanted to do in the water-power leases.

But I dissent from the opinion of the majority that a mortgagee in possession is not liable on such covenants.   While the deed from Thompson to Sprague, and the two contracts between them, constituted a mortgage, and gave Thompson the right to possession as long as he performed the contract on his part, on his default it gave Sprague the right to take possession; and there is sufficient evidence in this case to make it a question for the jury whether or not Sprague did subsequently take possession with Thompson's consent.    The position of the majority seems to be that the assignment from the lessor which will create privity of estate between his tenant and his

assignee must be a transfer of all the landlord's legal title; that what may be termed a "sublandlord," like a "subtenant," is not an assignee, and therefore not liable on covenants which run with the land. It is well settled that this is not the law. A transfer of the landlord's interest for the time, or part of the time, the lease runs, is sufficient. "A concurrent lease is one granted for a term which is to commence before the expiration or other determination of a previous lease of the same premises, made to another person, or, in other words, an assignment of a part of the reversion, entitling the lessee to all the rents accruing upon the previous lease after the date of his lease, and all the remedies against the tenant under the prior lease, which his lessor would have had, except for the assignment. But, unless under seal, it does not have this effect, because it does not come within the provisions of St. 32 Hen. VIII. ch. 34." Wood, Landl. & Ten. (1st Ed.) § 232. In the note to *Spencer's Case*, 1 Smith, Lead. Cas. 77 (page 151, 8th Ed.), it is said: "It is also well settled that an assignee of part of the reversion, e. g. for years, is within the act [citing authorities]; and so, also, is the assignee of the reversion in a part of the land."

Prior to said statute of 32 Hen. VIII. ch. 34, few covenants which ran with the land ran with the reversion, and the assignee or grantee of the landlord could neither sue the tenant, nor be sued by him; and whether a mortgagee in possession is in privity of estate with the tenant, so that he may sue or be sued on the covenants in the lease made by the mortgagor depends on the proper interpretation of that statute. In all of those states in which the mortgagee does not take the legal title, and has but a lien, a mortgagee not in possession is not an assignee under this statute, and cannot sue upon, or be sued upon, such covenants. The possessory right or estate of such a mortgagee in possession is somewhat anomalous. He has a legal right or estate, as distinguished from a mere equitable one, and his estate is a complete defense to an action of ejectment, and he can only be deprived of his possession by an action to redeem in a court of equity. *Pace* v. *Chadderdon*, 4 Minn. 499 (Gil. 390) ; *Jones* v. *Rigby*, 41 Minn. 530, (43 N. W. 390.) His possessory estate partakes somewhat of the nature of a leasehold estate, but is certainly of a higher character than any lease for years. It is more than a lease to the mortgagee, to terminate on payment of the

mortgage debt. It is a surrender to the mortgagee, which gives him rights of a higher character than a mere possessory lien, one of which rights is the right to claim adversely to the mortgagor, and thereby set in motion a process of strict foreclosure, which will ripen into full title. *Rogers* v. *Benton*, 39 Minn. 39, (38 N. W. 765.) In fact, there is not much difference between the substantial rights of a mortgagee in possession under such a mortgage, and of a mortgagee in possession under a mortgage conveying the legal title. The difference between the two is almost wholly technical, and each holds a legal estate,—one which a court of law will recognize. But it is well settled that the holder of a mere lien secured by possession is an assignee under the statute, and has privity of estate which gives him the benefit, and makes him liable for the burdens, of covenants in leases. In the great leading case on the interpretation of this statute (*Spencer's Case*, 5 Coke, 16), the fifth resolution, after naming several ways in which the interest, or a part of the interest, of a party to the lease may be transferred to another, who thereby comes into privity of estate, lays it down, "The same law is of tenant by statute merchant or statute staple or *elegit* of a term." In each of these cases the creditor merely held possession of the land, with the right to satisfy his debt out of the rents and profits. He held no higher estate.

Since the case of *Williams* v. *Bosanquet*, 1 Brod. & B. 238, it has generally been held in England that a mortgagee taking the legal title is liable on the covenants in a lease, whether he takes possession or not. This case was decided after much consideration, and after taking the opinion of all the judges. It goes very extensively into the question of the rights and liabilities of a mortgagee in such a case, and reviews the English authorities, and the distinctions made by the different cases. While it overrules *Eaton* v. *Jaques*, 2 Doug. 460, it also attempts to distinguish that case in the following language (page 260): "*Eaton* v. *Jaques* will stand on its own peculiar ground, which is that an assignment of a lease, taken by way of pledge or security, differs in this respect from an absolute assignment, so that entry and possession are necessary." It seems to me that is exactly in point here. In *Williams* v. *Bosanquet* it is conceded that possession, either actual or constructive, is necessary to bring the assignee within the statute; but it holds that in cases

where the instrument itself gives the assignee constructive possession, so that neither livery of seisin or formal entry on his part is necessary, but the instrument of transfer carries to him the constructive possession, actual possession is not necessary.

In that case there was a default in the mortgage and the mortgagee was entitled to the immediate possession. It seems to me that on the authority of these cases a mortgagee in possession not having the legal title but a mere lien and the right to possession, is an assignee within the statute of 32 Hen. VIII. ch. 34 and should be held liable on covenants running with the land.

(Opinion published 59 N. W. 638.)