H. MABEL MACDONALD, Landlord, *v.* MAX ROSENBLUM and Another, Tenants, and D. A. SCHULTE, INC., and Others, Undertenants.

Municipal Court of New York, Borough of Manhattan, Tenth District, February 19, 1934.

*Blandy, Mooney & Shipman [William W. Shaw* of counsel], for the landlord.

*Kerfoot & MacArthur [Branch P. Kerfoot* and *A. D. Stevenson* of counsel], for the Manufacturers Trust Company.

ROSALSKY, J. In addition to a final order for possession of the premises, the landlord demands a personal judgment against the tenant Max Rosenblum and against Manufacturers Trust Company, named as " assignee of the lease," for arrears of rent at the rate of $625 a month for the months from June, 1933, through to and including December, 1933, as well as the amount of taxes for the second half of the year 1933, water meter charges, interest and penalties, aggregating in all the sum of $5,449.47.

The tenant defaulted in appearing or answering. Manufacturers Trust Company, named as " assignee of the lease," does not object to the landlord having a final order for possession of the premises. It opposes the demand for a money judgment as against itself. This dispute presents the sole issue to be determined here.

On December 29, 1925, the landlord entered into a written agreement with Max Rosenblum as tenant renewing a previous lease of the premises for a term of twenty-one years from August 1, 1926, at an annual net rental of $15,750 in addition to the payment by the tenant of all taxes, assessments, water charges and premiums

of fire insurance in connection with the premises. On July 31, 1931, and again on August 22, 1932, the same parties agreed in writing to reduce said annual rental to $12,000 for one period, and to $7,500 for the period from June 1, 1932, to June 1, 1935.

On February 2, 1930, the tenant assigned the rents of said premises from and after February 1, 1930, to American Union Bank and by separate instrument also assigned the lease for the balance of the term. On August 5, 1931, the Superintendent of Banks of the State of New York took possession of the business and property of American Union Bank pursuant to section 57 of the Banking Law.

Among the assets of the bank taken over by the Superintendent was an indebtedness to the bank by Max Rosenblum of approximately $120,000, evidenced by his two collateral notes. The collateral for these loans, as appears upon the face of the notes, was the lease held by the tenant Max Rosenblum above mentioned.

It appears that in the late summer of 1931 about five banks failed, one of which was American Union Bank. In order to avoid hardship to their depositors, some of the Clearing House banks made up a fund to be used by the Superintendent of Banks in making payments of approximately fifty per cent to the depositors of these banks pending liquidation of their assets. Such assets were assigned to Manufacturers Trust Company, designated by the Clearing House banks contributing to such fund, to liquidate the assets of these banks. The contract with the Superintendent of Banks covering the assets of American Union Bank, dated September 16, 1931, shows that approximately $4,000,000 were paid over to the Superintendent, designated as " the original cash purchase price," with a proviso that the entire net proceeds realized by Manufacturers Trust Company in excess thereof should be paid over by Manufacturers Trust Company to the Superintendent of Banks for the benefit of creditors, depositors and stockholders of American Union Bank as " additional payment on account of the purchase price." The Superintendent specifically retained all rights against stockholders and the duty of adjusting all claims against American Union Bank, and the contract expressly provided: " Manufacturers shall not assume and shall not be deemed to have assumed any liability upon leases, contracts for personal service or other contracts or obligations of said institution except such obligations as it affirmatively elects in writing to assume."

This contract was subject to approval, and was approved by order of the Supreme Court, New York county, on October 29, 1931. It was then carried into effect by a bill of sale from the Superintendent of Banks to Manufacturers Trust Company of the assets and property of American Union Bank containing the

exemption from liability clause above noted. The two notes by the tenant Max Rosenblum were indorsed and assigned to Manufacturers Trust Company, though there has never been any assignment of the lease to it.

The landlord contends that Manufacturers Trust Company is liable for the rent, taxes and water charges in default, solely by reason of privity of estate, because it had possession, dominion and control of the premises for the period of default. The landlord disavows any claim that Manufacturers Trust Company has assumed the covenants of the lease so as to make it liable by privity of contract.

The landlord contends that Manufacturers Trust Company accepted the assignment of lease and has been in possession of the premises since its acquisition of the lease by its purchase of the assets of American Union Bank; that entry into possession by one who has accepted an assignment of lease is not necessary to establish its liability for rent by privity of estate (*Seventy-eighth St. & B'way Co.* v. *Purssell Mfg. Co.*, 166 App. Div. 684, 685); that Manufacturers Trust Company previous to the time of default claimed in this proceeding paid the main rent and taxes accruing on the property and collected rents from subtenants; that it attempted to rent parts of the premises and made some necessary repairs therein; that it offered to sell the main lease to the landlord and to the undertenant D. A. Schulte, Inc.; that it settled a claim under chattel mortgage made by the tenant upon furniture and fixtures used in the operation of the premises, and installed the Emergency Unemployment Relief Committee upon the premises and permitted it to occupy a portion of the premises rent free for purely charitable work.

Manufacturers Trust Company denies that it has, or ever had, any interest in the lease or in the premises covered thereby, excepting that it has a lien upon Max Rosenblum's lease as security for his indebtedness; that under agreement with the tenant it has been acting as his agent for the collection of the rents and care of the property by him. It disbursed no moneys of its own. It undertook to collect as much rent as possible from subtenants, and it used all moneys so collected for the purpose of discharging Rosenblum's obligation to the landlord in so far as the rents so collected would go. Such rents were insufficient for that purpose and left no excess to apply toward the account due on the two collateral notes by Rosenblum to American Union Bank indorsed over to Manufacturers Trust Company. In aid of its defense, Manufacturers Trust Company shows that subsequent to the assignment of lease by Max Rosenblum to American Union Bank as collateral, the land-

lord, on July 31, 1931, and again on August 23, 1932, entered into two written agreements modifying the lease and reducing the rental with the tenant Max Rosenblum without consent or approval of Manufacturers Trust Company. The premises were managed by Leonard Operating Company, controlled by the tenant's son, until about April, 1932, when, as a matter of economy, the management was taken over by Manufacturers Trust Company and thereafter handled by employees of its bank liquidation department. Throughout the entire time, every sublease was made with and signed by Max Rosenblum as tenant; he is the beneficiary on all fire insurance policies covering the premises; and Manufacturers Trust Company carried its accounts covering receipts and disbursements in connection with this property as part of the Max Rosenblum account in reference to the balance due from him on said notes.

From a review of all the evidence, I feel constrained to hold, following the order of the Supreme Court and the reservation in the bill of sale, that Manufacturers Trust Company did not assume any liability upon this lease. It never entered into possession of the premises as assignee of the lease or exercised any dominion over the premises, except as agent for the tenant Max Rosenblum. It was the duty of Manufacturers Trust Company in liquidating the assets of American Union Bank for the benefit of creditors, depositors and stockholders to use every effort to realize the maximum amount from the assets turned over to it in liquidation. What Manufacturers Trust Company did throughout was clearly referable to the agency of the tenant. This is evidenced by the landlord's dealing directly with the tenant in making two modifications of the lease and reductions in rent while Manufacturers Trust Company was acting as such agent. (*Revel Realty & Securities Co.* v. *Maxwell*, 65 Misc. 54.)

No act on the part of Manufacturers Trust Company rendered it liable as assignee of the lease.

The temporary use by the Emergency Unemployment Relief Committee of some vacant space, rent free, is shown to have been permitted by the tenant. The committee has not been in existence for a long time, and the record does not show when it ceased to occupy the space. I do not find this use to be any act of possession by the Manufacturers Trust Company.

*Talley* v. *Everard's Breweries* (116 N. Y. Supp. 657), cited by the landlord, is distinguishable. There the breweries did not act as agent for the lessee, but on its own account. The tenant gave a mortgage to defendant upon saloon fixtures in the premises, and assigned the lease as collateral, and subsequently made another assignment of the lease as security for his promissory note. Failing

to pay his rent for June, 1908, he, to the knowledge of the landlord's representative, delivered the keys of the premises to defendant. The rent for June and July, 1908, was paid by defendant's checks to the landlord. Inclosed was defendant's letter which appeared to acknowledge its liability for such rent. The tenant had an undertenant, from whom defendant collected rent after taking the keys. Up to the time of the trial defendant had retained the keys and it employed a watchman in relation to the premises. As the Appellate Term pointed out (p. 658): " Besides, there is no proof that Mr. Cosgrove [the tenant] requested defendant to pay this rent for his account, or that he requested any loan for that purpose. What defendant desired was the control of the premises, where were the fixtures upon which it held the chattel mortgage, and Cosgrove, unable to pay the rent, with the consent of Mr. Talley [the landlord] and at defendant's request, gave the keys to defendant. * * * It would be difficult to more conclusively prove absolute possession than has been done here. The defendant may not take and hold possession of plaintiffs' premises, either absolutely or to ' protect ' its property therein, without liability for the use thereof at a rental value which is undisputed."

*Century Holding Co.* v. *Ebling Brewing Co.* (185 App. Div. 292) is likewise distinguishable. It dealt with premises occupied as a saloon, defendant taking the keys and placing a watchman in possession. After the original tenant had vacated, defendant itself dealt with new subtenants, took a chattel mortgage upon fixtures and saloon equipment, and paid the rent to plaintiff.

*Seventy-eighth St. & B'way Co.* v. *Purssell Mfg. Co.* (166 App. Div. 684) is not in point. There a lease of a bankrupt tenant was sold by the receiver in bankruptcy and transferred by the purchaser to a corporation organized to carry on the business of the bankrupt. There was thus an absolute assignment and acceptance of the lease, which created a privity of estate between the lessor and the assignee.

Manufacturers Trust Company did not accept any absolute assignment of the lease in question. The bill of sale from the Superintendent of Banks to it, and the order of the Supreme Court approving the sale, expressly excluded in its very inception any liability upon the lease.

A mortgagee who merely secures a lien is not liable to the lessor (*Johnson* v. *Sherman*, 15 Cal. 287, 290; *Cargill* v. *Thompson*, 57 Minn. 534; 59 N. W. 638) until he takes possession under his mortgage. (*Century Holding Co.* v. *Ebling Brewing Co., supra; Day & Night Garage Co., Inc.*, v. *Promin Eng. Corp.*, 144 Misc. 106, 107.)

Thomas on Mortgages ([3d ed.] § 165) states the rule thus: " And

it is only when a mortgagee takes possession that he has the estate *cum onere* and becomes liable as assignee upon the covenants contained in the lease."

An assignee of a lease held merely as collateral security rests upon the same footing. Just as an assignee in fact is not liable until he has accepted the assignment, so an involuntary assignee can in no event be held liable till he has adopted the lease. For this reason an heir or devisee to whom a leasehold interest has descended is not liable for the rent reserved until he takes possession or signifies his acceptance of the lease. (*Noble* v. *Thayer*, 19 App. Div. 446.)

Nor is an executor or administrator personally liable as assignee unless he enters and holds possession. (16 R. C. L. 855; notes in Ann. Cas. 1916-E, 820, and 52 L. R. A. [N. S.] 987.) And though title to a leasehold vests in a trustee or assignee in bankruptcy or an assignee for the benefit of creditors, they are personally liable only if they elect to accept the leasehold, and they have a reasonable time within which to make the election. (Cases cited in notes in Ann. Cas. 1916-E, 815, and 59 L. R. A. 673.)

Manufacturers Trust Company did not assume any liability on the lease when it took over the assets of American Union Bank in liquidation, nor has it ever affirmatively elected in writing to assume any such obligation.

A final order will be granted awarding the landlord possession of the premises with a judgment against the tenant Max Rosenblum who has defaulted for $5,449.47. The proceeding as against Manufacturers Trust Company is dismissed.