MISSISSIPPI & RUM RIVER BOOM COMPANY *vs.* JOHN S. PRINCE and another.    (Plaintiff's Appeal.)

July 24, 1885.

**Pleading—Waiver of Demurrer to Counterclaim.**—*Walker* v. *Johnson,* 28 Minn. 147, followed, to the effect that, by taking issue on the facts instead of demurring, the plaintiff waives the objection that a cause of action pleaded as a counterclaim is not a proper subject of counterclaim.

**Damages—Profits.**—Instance of profits *held* not too speculative to form a basis for damages.

**Same—Question for Court.**—What damages are too speculative is for the court, and not for the jury, to determine.

This is an appeal by plaintiff, and the next following case is an appeal by defendants, from orders of the district court for Ramsey county denying their respective motions for a new trial, after a trial before *Wilkin,* J., and a jury, and verdict of $4,303.09 for defendants.

The action was originally brought in the district court for Hennepin county, to recover $851, the alleged value of work and labor performed by plaintiff in driving and booming logs belonging to the defendants. The answer of the defendants admits that plaintiff performed the work and labor, but denies that its value was greater than $500. The defendants further allege, as a counterclaim, that during the years 1880, 1881, and 1882, defendants, as co-partners, were engaged in the manufacture of, and as dealers in, lumber, lath, and shingles, at St. Paul, and in manufacturing and having manufactured pine logs into lumber, lath and shingles, at their steam mill on the Mississippi river, at West St. Paul, a short distance below the Falls of St. Anthony, and for the purpose of such manufacture the defendants during that time invested $25,000; that all the logs and materials from which such lumber, lath and shingles were or could be manufactured at said mill were and could only be obtained on the Mississippi river and its tributaries above the Falls of St. Anthony, and could only come down the Mississippi river and over the falls to said mill, and the defendants could not and did not procure any logs or material for manufacture elsewhere, all of which facts and circumstances

were well known to the plaintiff; that plaintiff is a corporation cre-ated and existing for the purpose of booming, sorting and rafting logs above the Falls of St. Anthony, on the Mississippi river, and it is made the duty of the plaintiff, by its charter and the laws of the state, to assort all logs as soon as practicable after the same shall have reached its boom, and turn the same over the Falls of St. Anthony whenever notified and requested so to do by the owners of such logs; that defendants owned and had in the Mississippi river, for use for manufacturing into lumber, lath, and shingles at their said mill, in 1880, at least 5,000,000 feet of pine logs, in 1881 at least 3,000,000 feet of pine logs, and in 1882 at least 2,000,000 feet of pine logs, and during each of said years the defendants gave due and sufficient no-tice to plaintiff that said logs were in the Mississippi river above plaintiff's boom and were coming into the boom, and requested plain-tiff to turn all of said logs over the Falls of St. Anthony into the river below; that all said logs during each of said years came into the plaintiff's booms above the falls, and could have been turned over by the plaintiff each year after said notice so as to have been profitably manufactured into lumber by defendants; but that the plaintiff un-necessarily and unreasonably neglected and refused to turn a large quantity, viz., 5,000,000 feet, of defendants' logs over the falls or into the river below; that, solely on account of this refusal and neglect on the part of the plaintiff, the defendants were deprived of the use of said logs for manufacture and were prevented from manufacturing said logs into lumber, to the great injury and damage of defendants and their said business, in at least the sum of $50,000. The answer further alleges that at no time since the logs owned by defendants have come over the Falls of St. Anthony have they been worth as much by at least $8 per thousand feet as they would have been worth at defendants' mill in West St. Paul if seasonably turned over. The reply put in issue substantially all the allegations contained in the counterclaim of defendants.

The following requests of the plaintiff for instructions to the jury were refused by the court, viz.:

Nineteen. "Even if the plaintiff has been guilty of any such de-fault, in order to justify you in finding damages against it therefor,

you must be satisfied from the evidence that such damages are the direct and proximate result of such default. Such damages must not be uncertain, conjectural, or speculative; and if the evidence satisfies you that the damages claimed by them cannot be otherwise than uncertain, conjectural, or speculative, you cannot find any such damages."

Twenty. "The profits which defendants might have made by the manufacturing of logs into lumber and the sale of such lumber cannot be allowed as a measure of damages in this case, if from the evidence such profits are conjectural, uncertain, or speculative."

Twenty-one. "Upon all the evidence in this case you cannot allow as a measure of damages the profits which defendants might have made by the manufacture and sale of lumber from their logs."

Twenty-two. "The basis upon which the defendants claim damages upon their first counterclaim in this case is deprivation of profits, in that they were prevented by the neglect of duty on the part of the plaintiff from getting logs to their mill to be manufactured by them into lumber, and that they could not supply themselves with logs for such purpose by purchase in the market. It is *claimed* by defendants that during the years 1880, 1881, and 1882 they procured for such purpose and turned into plaintiff's boom a quantity of logs, alleged in their answer and evidence of upward of ten million feet of logs, and that plaintiff was in default in not turning to them over the falls a portion of these logs,—to wit, all such thereof as were not so turned by plaintiff or voluntarily sold or disposed of by defendants. If you find from the evidence that the defendants did in fact, during said time, procure, purchase, and manufacture at their mill any quantity of other logs, and that such quantity of other logs so procured by purchase and manufactured by defendants was equal to or in excess of the quantity which, by plaintiff's default, were not turned over the falls to defendants, these defendants cannot claim any damages upon the ground of deprivation of profits; or, if you find that the quantity of other logs which defendants so procured by purchase and manufactured at their mill was less than the quantity which, by plaintiff's default, was not turned over the falls to defendants, then you can only assess damages to defendants upon the ground

of deprivation of profits in respect of the excess of the quantity which, by plaintiff's default, were not turned over the falls, over and above the quantity of other logs which defendants so procured by purchase and manufactured."

Twenty-three. "The defendants would not, as against the plaintiff, be justified in failing to provide themselves with sufficient logs to run their mill to its full capacity upon the ground of any apprehended failure or neglect of plaintiff to perform its duty in respect to them. If the only source from which the defendants could get logs to run their mill was, to their knowledge and that of the plaintiff, from the upper Mississippi river and its tributaries, and to come through the boom of plaintiff, then, as between them and plaintiff, it must be presumed that they provided for themselves and turned into the boom of plaintiff all the logs they wanted and sufficient to supply their mill; and if they were in fact able to and did supply themselves by purchase with other logs, in place of any quantity of their own so provided and turned into plaintiff's boom which plaintiff neglected to turn to them, then, in any estimate of damages upon the basis of profits prevented, such quantity of other logs as defendants so purchased must be deducted from the quantity which plaintiff failed to turn to defendants."

*Shaw & Cray* and *J. B. Gilfillan,* for appellant, that the court erred in stating the rule of damages in this case, cited *Messmore* v. *N. Y. Shot & Lead Co.,* 40 N. Y. 422; *Griffin* v. *Colver,* 16 N. Y. 489; *Masterton* v. *Mayor,* 7 Hill, 61; *Blanchard* v. *Ely,* 21 Wend. 342; *Taylor* v. *Maguire,* 12 Mo. 313; *Porter* v. *Woods,* 3 Humph. (Tenn.) 56; *Boyle* v. *Reeder,* 1 Iredell, 607; *Freeman* v. *Clute,* 3 Barb. 424; *Simmer* v. *City of St. Paul,* 23 Minn. 408.

*J. M. Gilman* and *C. D. Kerr,* for respondents.

GILFILLAN, C. J.    This was an action brought by plaintiff to recover compensation, at the rate allowed by its charter, for running defendants' logs through its booms above the Falls of St. Anthony, in the years 1881 and 1882. The questions in the case arise on a counterclaim set up by defendants. The charter makes it the duty of plaintiff, on a specified notice, to turn loose all logs in its booms destined below the falls. The counterclaim is for neglecting

their duty in respect to defendants' logs in the years 1880, 1881, and 1882. The plaintiff insists that this is not, under the statute, a counterclaim; that the court erred in its charges and refusals to charge with respect to it; and that an improper rule of damages upon it was adopted in the court below.

The first of these objections the plaintiff waived in the court below by omitting to demur on that ground, and taking issue on the facts. *Walker* v. *Johnson,* 28 Minn. 147.

Of the other two, we will first consider the second, as it is by far the more important. The measure of damages adopted by the court below is fully stated in the seventh request of the defendants, which was given to the jury as follows: "If the defendants wanted their logs to manufacture into lumber, and had the facilities for doing so, and depended upon getting their logs for that purpose, and did not have other logs, and could not get a sufficient supply from other sources to manufacture, and these facts were known to the plaintiff when notified to turn them over the falls, then, if the plaintiff was in fault in not delivering the logs, and defendants could have manufactured them if delivered, the defendants are entitled to damages, to the difference between the market value of the manufactured lumber from the logs at defendants' mills and the market value of the logs in plaintiff's boom at the time they should have been turned out, adding thereto the cost of manufacturing the same into lumber, and the boom charges, and the cost of getting the logs to defendants' mill if they had been duly turned out."

The evidence tended to establish the facts specified in the request, and that the defendants, during the time covered by the counter-claim, had on the river, below the Falls of St. Anthony, a mill and all facilities for manufacturing logs into lumber, lath, shingles, etc., and had procured these logs above the falls for the purpose of so manufacturing. The substance of the request is that if defendants intended the logs for manufacture at their mill, had there all the facilities for such manufacture, and could not get elsewhere logs to supply their mill, and these facts were known to plaintiff when notified to turn the logs loose, then the defendants are entitled to recover, as damages for failure to turn them loose, the profits defend-

ants would have made by manufacturing them if they had had them to manufacture.

The rule in *Hadley* v. *Baxendale*, 9 Exch. 341, that the damages for breach of a contract "should be such as may fairly and reasonably be considered, as either arising naturally,—*i. e.*, according to the usual course of things,—from such breach of contract itself, or such as may reasonably be supposed to have been in the contemplation of both parties, at the time they made the contract, as the probable result of it;" has been accepted and acted on in this court. *Converse* v. *Burrows*, 2 Minn. 191, (229;) *Paine* v. *Sherwood*, 19 Minn. 270, (315,) and 21 Minn. 225; *Beaupre* v. *Pacific & A. Tel. Co.*, 21 Minn. 155. The rule is not denied in this case, but the objection is made that the damages which the request allows are too remote, uncertain, and conjectural. Under either branch of the rule the damages must be certain, both in their nature and in respect to the cause from which they proceed, and must not be the remote, but the proximate, consequence of the breach, and must not be speculative or contingent. They must appear with reasonable certainty, and not as matter of conjecture. Absolute certainty, however, is not required.

In *Simmer* v. *City of St. Paul*, 23 Minn. 408, an action for interruption to plaintiff's business, it was held that gains and profits of the business were not a proper element of damages, because it did not appear whether they were such as might be taken into account in estimating the value of the business, or such as were merely anticipated and conjectural. On the other hand, in *Goebel* v. *Hough*, 26 Minn. 252, also a claim for interrupting a business, it appearing that it was a regular and established business, it was held that its value could be got at with reasonable certainty by showing its profits for a reasonable time prior to the interruption, and that the ordinary profits of such a business are not contingent or speculative in the sense that excludes profits from consideration as an element of damages. Although such a business is liable to mishaps and contingencies, it may be assumed, with as much certainty as can ever be assured in judging of the affairs of men, that if profitable in the past, it will, under similar conditions, be profitable in the future. So,

upon a contract to drive logs at an agreed price per thousand which defendant prevented plaintiff from performing, the profits that would have accrued from its performance were taken as the general measure of damages, although from the nature of the business the amount of profits could not be fixed with absolute certainty. *Glaspie* v. *Glassow*, 28 Minn. 158.

It may be assumed with reasonable certainty that if the plaintiff had, on receiving the notice, turned the logs loose, they would have come to the defendants' mill, and that the defendants, as they had the means and were prepared and intended to do, would have manufactured them, and would have had the lumber; and it is also reasonably certain that the detention of the logs prevented defendants' being in that situation, and deprived them of the advantage or profit which it would have given them. That such would be the effect of the detention must have been in contemplation of the parties if the plaintiff had the notice mentioned in the request. The difference between the value of the logs in the boom, with the boom charges, the cost of getting the logs to the mill, and the cost of manufacturing added, and the value of the manufactured lumber, was not, at the time of the trial, matter of speculation or conjecture, but of as much certainty as the value of personal property and the cost of labor or manufacturing at a time past can ever be. That difference represents the loss of defendants in consequence of plaintiff's neglect to turn the logs loose. To that extent they were worse off because of such neglect. The request correctly stated the rule of damages.

It being for the court, and not for the jury, to determine what in any case is the proper rule of damages, and when damages are speculative, so that they should be excluded, the plaintiff's nineteenth, twentieth, and twenty-first requests were properly refused. We also see no error in the refusal to give plaintiff's twenty-second and twenty-third requests, the court having in its general charge given the jury in clearer and better terms all that is correct in those requests.

Plaintiff's twenty-seventh request was: "If you find from the evidence, in respect of any logs herein claimed to be the property of the defendants, that any portion thereof were, when turned out of plaintiff's boom, the property of H. Houlton individually, and not of

Prince & Houlton, then you cannot include in any estimate of damages any such part of said logs as you shall find to have been the property of H. Houlton when so turned out, notwithstanding the same may have been, after being turned out of plaintiff's boom, scaled to Prince & Houlton." This the court declined to give, and instructed that the logs were to be regarded as under the control of the plaintiff until scaled, and if they were, as claimed, to become the property of Prince & Houlton when scaled, that is sufficient for the purpose of this suit to authorize the defendants to recover.

In respect to the logs referred to, the evidence tended to prove this : that they were bought or cut by H. Houlton for himself, for manufacture at a mill of his on the river above the limits of plaintiff's jurisdiction, and that, prior to their coming down the river, he and Prince & Houlton agreed that all his logs which came into plaintiff's boom should belong to the firm, and upon being scaled should be paid for by them and become their property. This arrangement defendants appear to have made for the same purpose with which they procured their other logs, to wit, for manufacturing at their mill. Had the plaintiff done its duty on receiving notice to turn loose the logs, (and the notice seems to have been signed both by the firm and Houlton,) they would have been scaled and turned out within the time specified by its charter, and within that time, under the agreement between Houlton and the firm, the legal title to Houlton's logs would have vested in the firm. That it did not vest in them within that time was due to the fault of plaintiff. Under that agreement nothing further was to be done by the parties to it to pass the title. That gave the firm an interest in the logs sufficient to raise a duty on the part of plaintiff towards the firm, as well as towards Houlton. It is therefore immaterial, as affecting defendants' right to recover, that the legal title to the logs remained in Houlton as a consequence of plaintiff's default during this detention. The result to defendants was the same as though the legal title had previously vested in them.

Order affirmed.