EDMUND T. SYKES v. CITY OF ST. CLOUD.[1]

April 10, 1895.

No. 9129.

### Water Contract—Part Performance—Acceptance of Benefits.

Where a contract by which a waterworks company agreed with a city to furnish water for domestic and certain public purposes, and also to keep a designated number of hydrants constantly supplied with water under sufficient pressure for effective fire service for a term of years, has been substantially performed as to the first-named purpose, but not as to the latter, and the city has voluntarily accepted and received the benefit of its performance as to the first part of the contract, knowing that the contract was not being fully performed as to the last-named part thereof, it is precluded from insisting upon a performance of the residue as a condition precedent to its liability to pay for what it has received, and must rely upon its claim for damages as to the part not performed.

[1] Reported in 62 N. W. 613.

Appeal by plaintiff from an order of the district court for Stearns county, Searle, J., denying a motion for a new trial. The facts are stated in the opinion. At the trial the court charged the jury in substance, among other things, that in order to entitle plaintiff to recover he must satisfy them by a preponderance of evidence that the waterworks company furnished water in all its hydrants, for which plaintiff claimed compensation, by means of a waterworks system in substantial compliance with the contract requiring the waterworks company constantly, day and night, except in case of unavoidable accident, to keep the hydrants supplied with water under sufficient pressure for effective fire service. The jury returned a verdict for defendant. Reversed.

*Bartlett, Robertson & Higgins,* for appellant.

The answer did not contain facts constituting a complete defense. Wiley v. Inhabitants of Athol, 150 Mass. 426, 23 N. E. 311; Burlington W. W. Co. v. City of Burlington, 43 Kan. 725, 23 Pac. 1068; City of Winfield v. Winfield W. Co., 51 Kan. 70, 32 Pac. 663; Wilson v. City of Charlotte, 108 N. C. 121, 12 S. E. 846; Fresno M. Co. v. Fresno C. & I. Co. (Cal.) 36 Pac. 412; Kansas City v. National W. Co., 10 C. C. A. 653, 62 Fed. 853.

*M. D. Taylor,* City Attorney, for respondent.

Plaintiff must prove a substantial compliance with the contract, or he can recover nothing. Paine v. Sherwood, 21 Minn. 225; Trainor v. Worman, 34 Minn. 237, 25 N. W. 401; Becker v. Sweetzer, 15 Minn. 346 (427); Madden v. Oestrich, 46 Minn. 538, 49 N. W. 301; Stees v. Leonard, 20 Minn. 448 (494); Cowley v. Davidson, 13 Minn. 86 (92); Anderson v. May, 50 Minn. 280, 52 N. W. 530; Weber v. Clark, 24 Minn. 354; Bixby v. Wilkinson, 25 Minn. 481; Kriger v. Leppel, 42 Minn. 6, 43 N. W. 484; Peterson v. Mayer, 46 Minn. 468, 49 N. W. 245; Nelichka v. Esterly, 29 Minn. 146, 12 N. W. 457; Elliott v. Caldwell, 43 Minn. 357, 45 N. W. 845; Winfield W. Co. v. City of Winfield, 51 Kan. 104, 33 Pac. 714; Farmers' L. & T. Co. v. Galesburg, 133 U. S. 156, 10 Sup. Ct. 316. A cross action for damages furnishes no adequate remedy. Paducah L. Co. v. Paducah W. S. Co., 89 Ky. 340, 12 S. W. 554, and 13 S. W. 249; City of Burlington v. Burlington W. Co., 86 Iowa, 266, 53 N. W. 246.

BUCK, J. The city council of the city of St. Cloud, a municipal corporation, passed an ordinance September 12, 1887, known as "Ordinance No. 74," the same being "An ordinance providing for the sale of the waterworks of St. Cloud, to Henry W. Phelps, E. T. Sykes and David D. Brooks, of the city of Minneapolis, state of Minnesota, and for the extension of said works, and defining their rights, privileges and powers," which said ordinance was approved by the mayor, and was published and took effect September 22, 1887.

The portions of said ordinance necessary to be here taken particularly into consideration are as follows:

"The common council of the city of St. Cloud do ordain:

"Section 1. That Henry W. Phelps, Edmund T. Sykes and David D. Brooks, of the city of Minneapolis, Minnesota, their legal representatives or assigns be, and they are under the conditions, resolutions, covenants and agreements hereinafter contained, but subject to the right of purchase and to the forfeitures hereinafter provided, hereby authorized and empowered to build, construct, maintain and operate and own waterworks in the said city of St. Cloud, to supply said city and its inhabitants with pure and wholesome water suitable for domestic, manufacturing and fire purposes; to lay down pipes and water mains for the purpose of conveying water through the streets, avenues and alleys of said city; to acquire and hold, as by law authorized, any and all real estate, easements and water rights necessary to that end and purpose; to use within the present and future limits of said city any and all streets, alleys, avenues and bridges, beds of rivers, or other public grounds, as are now, or may be hereafter, laid out while laying and preparing such waterworks; to receive, take, store, purify, conduct and distribute water through said city; to erect and maintain settling basins, filtering galleries, reservoirs, water towers, pump houses and all other necessary buildings, engines, machinery and other appliances and attachments necessary or expedient for the proper conducting and carrying on of such works; to cross any bridge or street in said city for the purpose of laying and extending their pipes, conduits or aqueducts as may be necessary for the proper distribution of water throughout said city of St. Cloud, so as to afford the most adequate supply for domestic purposes and the greatest protection against fire; said grantees, their legal representatives or assigns to have the right to

establish, construct, maintain and operate said waterworks as herein specified for the term of thirty years from the date of the passage and acceptance of this ordinance, and all rights and liabilities as hereinafter provided, to continue in force for another like period of thirty years, unless sooner terminated by the purchase of said works by said city of St. Cloud as hereinafter provided.

&ast; &ast; &ast; &ast; &ast; &ast; &ast; &ast; &ast;

"Sec. 4. * * * The said water works shall, at all times, be complete and perfect in all its details, and shall consist of the pumps, boilers, machinery, appurtenances and attachments now connected with the present works, and such additions to be made as soon as practicable as will secure a pumping capacity at the rate of at least 3,000,000 gallons per day, and such other additions thereto or in lieu thereof, as may be necessary from time to time, as the works are extended or become worn or defective. And there shall also be furnished an iron stand pipe or tank, properly protected from frost, not less than 25 feet in diameter and 100 feet high, to be placed on high ground or raised on a stone foundation so as to give 100 feet pressure in the pipes; or a good, substantial and complete reservoir and settling basin shall be built on the high ground situated in a southwesterly direction from the city, and shall have a capacity of not less than 5,000,000 gallons." The remainder of said section designates the kind and quality of pipe to be used for water mains,. and specifies particularly the streets upon which said mains shall be laid, and the size of pipe required to be so laid.

"Sec. 5. In consideration of said conveyances, and of this franchise, and as full compensation therefor to the city said grantees, their heirs and assigns, shall, during the full term and continuance of this franchise and license, supply water free of charge, from such attachments as the city may make or cause to be made, for the purposes and use of the building and buildings of its fire department, of its city offices, and for flush tanks for sewers, and for drinking purposes for all churches in said city, and all free public schools and all parochial schools in said city; all water furnished free to be through self-closing fixtures, except public fountains and sewer flush tanks. And said city shall also have the right, free of charge, to use water from all public fire hydrants during the full term and continuance of this franchise and license, for the purpose of flushing:

public sewers; but there shall not be more than two hydrants opened at any one time for such purpose, and no one hydrant shall be opened oftener than twice in each week, and there shall be no flushing at the time of a fire. And the said city shall also have water free of charge for a public drinking fountain with self-closing valves, for man and beast, in each and every ward of said city, and for two public fountains, each fountain to have not to exceed six jets, each of which jets shall not exceed one thirty-second of an inch, and not to run exceeding ten hours a day for six months in the year. Water for Lake George shall be furnished at 5 cents per thousand gallons for the first thirty thousand gallons furnished each season, and at 7 cents per thousand gallons for all in excess of that amount. * * * Water shall also be furnished free for street sprinkling for a distance equal to the length of thirty blocks, measuring from center to center of streets, and at 5 cents per thousand gallons for all in excess of that distance, the city to furnish and erect and connect all stand pipes for taking such water at its own cost and expense; also to make all connections to mains when the water is furnished them free, and the said city is to keep in good repair all such connections and faucets, so that there shall be no waste of water. The locations of the aforesaid fountains and stand pipes and the number of such stand pipes is to be determined by said city."

Section 6 provides for the placing of hydrants, the extension of the pipe system with additional hydrants, and the raising by taxation of the fund known as the "fire hydrant fund," to be irrevocably and exclusively devoted to the payment of hydrant rentals under this ordinance, and not to be otherwise employed. Said section further provides that, after the completion of said waterworks, "the said grantees, their heirs and assigns, agree to use and shall constantly operate the said works during the full term and continuance of this franchise and license, so as at all times to furnish said city with a full and ample supply of water for fire purposes as hereinafter provided, and so as to furnish the inhabitants of said city with a full and ample supply of water for domestic purposes."

Section 7 provides rates to consumers.

Section 8 provides for the protection of the rights of the waterworks company by the passage of proper ordinances.

"Sec. 9. In consideration of the benefits which shall be derived by

the said city and its inhabitants, from the construction and operation of said waterworks, and in further consideration of the water supply hereby secured for public uses, and as the inducement for the said grantees to enter upon the construction of the said waterworks, the franchise and license hereby granted to and vested in them, their heirs and assigns, shall remain in full force and effect for the term of thirty years, subject to the right of purchase herein contained and subject to the forfeitures herein provided; and for the same consideration and as an inducement, the city of St. Cloud hereby rents of the said grantees, their heirs and assigns, for the uses hereinafter mentioned, the said eighty-five hydrants and the fifteen that are now connected to the present water system hereinafter mentioned, for and during the term of thirty years from the completion of said works or until the purchase of said works by said city, if the same are purchased by said city prior to the expiration of said term; and the city of St. Cloud agrees to use the said hydrants for the practice and drill of its fire companies and for the extinguishment of fires only, except as hereinbefore provided, and to make good to the said grantees, their heirs and assigns, any injury which may happen to any of them through the fault of any officer or servant of said city, or any member of its fire department; and hereby promises and agrees to pay rent for the said one hundred hydrants at the rate of sixty dollars per annum for each and every hydrant attached to said waterworks up to the number of one hundred, until such time as said grantees, their heirs or assigns, shall have not less than five hundred private consumers, and thereafter at the rate of fifty-five dollars per annum for each and every one of said hydrants. In estimating the number of consumers, each place for which water is paid shall be considered a consumer. For each hydrant above the number of one hundred said city shall pay the sum of fifty dollars per annum during the aforesaid term. The said rentals the city of St. Cloud promises to pay in semi annual instalments on the first day of January and July in each and every year during the said term, to the said grantees, their heirs and assigns. The rental for each hydrant shall begin when notice is given to the city clerk in writing that the same is connected and ready for use. The said grantees, their heirs and assigns, shall constantly, day and night, except in case of an unavoidable acci-

dent, keep all hydrants supplied with water under sufficient pressure for effective fire service. And the said grantees, their heirs and assigns, shall test the power and capacity of said works on their completion, under supervision of said city, when they shall throw water from six separate hydrants at one and the same time, one hundred feet high through one hundred feet of two and one-half inch hose and a one inch nozzle, said hydrant to be designated by the city engineer as proper for a fair test, upon which test having been made as aforesaid, the city of St. Cloud agree to accept said works forthwith. The said city shall have the right upon the mains hereinbefore provided for, to put in at its own cost and expense, any intermediate fire hydrants free of charge for water during the time of the rental of the hydrants, which hydrants shall be kept in repair and maintained by said grantees. The said grantees, their heirs and assigns, shall constantly keep all fire hydrants rented of them or used by said city in good repair and efficiency for fire service, and ready for use, and whenever necessary, shall apply sufficient power to effectively operate the same without the aid of the fire engines, and to throw streams of water that shall comply with the said tests. The chief of the fire department of this city, and in case of his absence the officer in charge thereof, shall have the charge and control of said hydrants, and shall inspect the same as often as he deems necessary, and if upon inspection any of said hydrants are found to be out of working order, he shall forthwith notify the chief officer in charge of the waterworks, in writing, specifying the hydrant or hydrants out of working order, and said officer of the waterworks shall forthwith repair the same. And if not put in working order within three days after such notice, the rental of such hydrant or hydrants shall be stopped, and the grantees, their heirs and assigns, shall pay to the city a forfeit of ten dollars per week while such hydrant or hydrants remain out of order."

The provisions of said ordinance respecting the purchase of the then existing waterworks system of the city of St. Cloud, and the extension thereof, were carried out by the said grantees. On December 12, 1887, the St. Cloud Waterworks Company was incorporated under the laws of the state of Minnesota, and the rights of the grantees named in said Ordinance No. 74 thereafter by them duly

transferred to the said St. Cloud Waterworks Company. After the completion of the works, the final test provided for by the ordinance was complied with, and the execution of the contract by the waterworks company acknowledged, and the waterworks system formally accepted by the city. Prior to July 1, 1891, extensions had been made of said waterworks system, and additional hydrants placed, so that during the ensuing year there were 132 hydrants in use, the rental of which, under the ordinance, amounted to $7,600 per annum, payable in semiannual instalments of $3,800 each, on January 1, 1892, and July 1, 1892. The city of St. Cloud paid to the waterworks company $2,000 on account of the instalment of rent falling due January 1, 1892. During the year 1888, the waterworks company, upon the request and direction of the city engineer, supplied and furnished to the city certain waterworks connections, appliances, fixtures, and materials, which were received and have ever since been used by the city, and performed labor in connection therewith, of the reasonable value in the aggregate of $82.91. No part of this was ever paid by the city. The said last-mentioned claim, together with the balance of hydrant rentals of $1,800 for the period from July 1, 1891, to December 31, 1891, inclusive, and the entire hydrant rental of $3,800 for the period from January 1, 1892, to June 30, 1892, inclusive, were by the waterworks company sold and assigned to the plaintiff herein, who brings suit therefor.

Prior to the period in question, no difference arose between the city and the waterworks company respecting the service rendered by the latter. Full compliance with the provisions of section 5 of the ordinance is admitted by the defendant, the controversy herein relating solely to the fire protection afforded by said company. During the year in question, it is claimed by the defendant that the waterworks company failed to comply with the requirements of the ordinance, in that the pumping capacity of said waterworks was less than 3,000,000 gallons every 24 hours, and that during none of said time did the company furnish any fire protection to said city and its inhabitants. The action is one upon contract, and not for the value of the services performed. The answer alleges a total failure on the part of the St. Cloud Waterworks Company to comply with the terms of its contract with the defendant. Upon the trial, the material and substantial question tried was whether the water--

works company furnished a sufficient supply of water and under sufficient pressure for effective fire service. The defendant did not introduce any evidence as to whether the water furnished was pure and wholesome, but the uncontradicted evidence showed that the company procured water which was all right for use, and which was passed through a strainer, but that it was not filtered; yet it does not appear that any complaint was ever made by any one that the water was impure, or that it needed filtering for any purpose, and the court instructed the jury that the defense that the water was not filtered was not maintainable. The defendant did not object or except to this instruction. We are of the opinion, therefore, that the question as to the breach of the contract in not furnishing pure and wholesome water is eliminated from the case so far as it constitutes a defense, but that the fact that water was continually furnished by the waterworks company, and accepted, used, and enjoyed by the defendant, during the period of time for which plaintiff claims unpaid rent, may be considered in determining the legal rights and equities of the parties.

This case can only be properly determined upon a careful examination and thorough understanding of all the facts. It is one of grave importance to both parties, and we find but few authorities bearing upon the issue involved. The plant itself was one which the city had partly constructed, and for which it has received a large sum of money upon the sale thereof. St. Cloud is a city of several thousand people, and pure, wholesome water and adequate fire protection are essential to its prosperity. The waterworks plant is one of great value, and great expense must necessarily be incurred in keeping it at all times ready for effective service. The franchise is to run for 30 years. The rule of law adopted by the court as applicable to a breach of contract of this character would practically destroy the value of this plant. In whatever respect the waterworks company may have failed to fully and literally comply with the exact terms of the contract, it does not appear that it ever intentionally or fraudulently violated or abandoned the contract. These are elements which we should consider, because we should give a more liberal consideration to the equitable rights of the contractor when he has in good faith endeavored to comply with his contract, and his service has added value to the employer's property,

or inured to his comfort and pleasure, and a benefit necessarily accrues to him. 2 Suth. Dam. *515.

In the case at bar, under the terms of the contract, there were many important things to be done by the waterworks company for the defendant, of great value to the city, besides furnishing a sufficient supply of water for fire protection, which things, it must be assumed, were done in full compliance with the exact terms of the contract. Section 5 of the ordinance provides, in detail, what many of these things to be done were, and it is conceded that they were done by the waterworks company. It supplied water free of charge for its fire department buildings, its city offices, for flush tanks for sewers, for drinking purposes for all its churches, its free public schools and parochial schools, for flushing public sewers, for drinking fountains in each ward of the city with self-closing valves, for sprinkling streets. It also furnished the inhabitants of said city with a full and ample supply of water for domestic purposes, the consumer, however, paying the rates for such water. It does not appear that the waterworks company were in default in not supplying a sufficient quantity of water for fire purposes until about December 1, 1891. This includes five months of the time embraced in the account for rental sued upon. During the remaining period of about seven months there was not an adequate supply for fire purposes upon three or four occasions, although during that period there were about 18 fires, and no material damage resulted from want of an adequate supply of water by the company except in the three or four instances stated. In view of all the facts, it seems to us that there was a performance of the contract in a substantial part by the waterworks company. Before the alleged default on the part of the waterworks company, there had been a test of the capability of the plant, which was satisfactory to the city, and no formal complaint was made until the latter part of January, 1892, when the city appointed a committee to investigate the cause of the defective supply of water for fire protection. In this investigation the waterworks company participated; and, upon the committee making a report to the company, it stated to the city by a written communication, which was put in evidence, dated March 1, 1892, that such report was the first official report that it had received of any dissatisfaction with the service it was rendering,

and that it would as soon as practicable make the necessary repairs and improvements. Various improvements and repairs were made by it prior to July 1, 1892, and during this time several fires occurred, and the company supplied the water for putting them out. It must be conceded, upon the evidence, that at no time did the city forbid the company from going on with the contract in whole or in part by reason of its defective service in not furnishing an adequate supply of water for protection against fires. It enjoyed all the benefits accruing under section 5 of the ordinance without complaint or dissent. It allowed the company to make repairs and improvements upon its plant for several months, and to operate it during such time in supplying such an amount of water for protection against fire as it was able to give, without any notice to the company that it would not pay for such services as it in fact rendered. It knew of the breach of the contract and the imperfect work, but such work as it was it appropriated to its use, and enjoyed the benefit thereof. It took no steps to cancel the contract or relieve itself from liability. It did not merely acquiesce in the services performed, but took part in the test as to the sufficiency of the plant under the terms of the contract. It did not challenge the honesty of the company's efforts, nor impute to it any fraudulent design, but made useful to itself and enjoyed, so far as possible, the services of the company. This was not done for a day or temporarily, but for the full year, for which it says it should not pay anything. If there was a daily default or breach of the contract by the company, there was also a daily acceptance by the city of the benefits of the service rendered by the company. If it wanted the contract terminated, it should have said so, and have done so. Of course, if the company had not furnished any water, it could not have collected any rental. It was its duty under the contract to furnish this water, and this was a continuing duty on its part; and, in the absence of any acts of waiver or enjoying and participating in the benefits of the service performed, it would be a condition precedent to enable the company to recover for rental of the hydrants. We think, however, that the rule laid down in Wiley v. Inhabitants of Athol, 150 Mass. 426, 23 N. E. 311, is a fair and equitable one, viz.: "But although conditions precedent must be performed, and a partial performance is not sufficient, yet when a

contract has been performed in a substantial part, and the other party has voluntarily accepted and received the benefit of the part performance, knowing that the contract was not being fully performed, the latter may thereby be precluded from relying upon the performance of the residue as a condition precedent to his liability to pay for what he has received, and may be compelled to rely upon his claim for damages in respect of the defective performance."

We desire it to be expressly understood, however, that we are not criticising the official authorities of the city of St. Cloud for not canceling this contract, or for not notifying the waterworks company not to proceed with the performance of the conditions of the contract any further. It was far wiser and better to allow the company to perform such parts of the contract as the evidence shows it did perform than to seek to have the contract annulled in whole at once on default in the performance of some part of it. The officers of the city of St. Cloud had a public duty to perform in regard to the welfare of the people of that city. Canceling the contract would at once have deprived the people of all the benefits derived under section 5 of the ordinance. Those benefits were of great public importance, so much so that the public authorities could not well ignore them. Even the supply of water for protection against fire was adequate in the majority of cases. To have left the city without any fire protection, without water for domestic purposes and the various purposes enumerated in the contract, would have rendered the public officials of that city censurable. They could not well nullify the contract under such circumstances, and it may well be doubted if the parties ever contemplated that payment for rentals should be entirely or wholly suspended in case of a partial failure to perform in every particular. A waterworks plant of the size and cost of this cannot be put in and operated in a short time, but must necessarily take several months for its completion, and the city authorities acted wisely in the course pursued by them. Compelling them, however, to pay for benefits received, and to recover for damages sustained, is an equitable and legal disposition of this action. We must not, however, be understood as trenching upon the rules heretofore laid down by this court in regard to breach or nonperformance of ordinary contracts. We decide this case upon the facts appearing in it, and upon a principle which we think equi-

table and just, even if there were no authorities to sustain our views.

Upon the question of pleading, we are of the opinion that the plaintiff pursued the proper practice. Upon his theory of the case, he could not properly have done otherwise. He contended that he had performed all of the conditions of the contract, and framed his complaint accordingly. Upon this theory he went to trial, and so tried the case. If he had conceded a substantial breach of the contract, or only a partial and not a substantial performance of it, then, perhaps, an action upon quantum meruit might have been brought, if he claimed that the defendant had by its acts waived a strict performance, and by its acts rendered itself liable upon an implied contract. In either form of the complaint, the defendant cannot be injured, for whatever legal or equitable defense it has may be interposed to one form of pleading as well as to the other. In this case it could have interposed in its answer a claim for the damages it suffered by way of recoupment by reason of the failure to furnish a full and adequate supply of water for protection against fires.

It is claimed by the defendant that there must be a punctilious performance of the contract on the part of the waterworks company, or that it cannot recover at all, because in case of defective service there is no means of measuring the damages which would accrue between full and complete service and inefficient or defective service. In the case of Wiley v. Inhabitants of Athol, 150 Mass. 426, 23 N. E. 311, heretofore cited, it was held that "the measure of damages was the difference between the value of the supply of water actually furnished and of that which by the contract should have been furnished, estimated with reference to the uses for which it was furnished." We are of the opinion that the rule adopted in that case is correct and applicable to the case at bar if the defendant should so amend its answer as to conform to the rule of law herein laid down.

The court below submitted the case to the jury upon an erroneous theory of the law, and gave it such instructions as are inconsistent with the principles laid down in this opinion.

The order denying the plaintiff's motion for a new trial is therefore reversed.