IRONTON LAND COMPANY v. W. W. BUTCHART and Another.

June 15, 1898.

Nos. 11,101—(132).

Bonus Mortgage—Foreclosure by Assignee—Partial Failure of Consideration—Damages upon Breach of Contract as a Defense to Action.

The plaintiff was the owner of 165 acres of land, and, for the purpose of increasing its value and salability, agreed with Y., who knew of such purpose, to convey to him ten acres thereof, and give to him a cash bonus, for which he agreed to erect and operate on the ten acres a steel plant, of a stipulated character and capacity. The plaintiff made the conveyance, paid a part of the cash bonus, and gave a mortgage to secure the balance. The contract on the part of Y. was substantially performed as to some of its terms, but there was not a complete performance of all of them. The mortgage was assigned, and the assignee received it with notice of the plaintiff's equities. *Held*, that the plaintiff was entitled to allege and prove, as a defense to proceedings instituted by the assignee to foreclose the mortgage, the damages it had sustained by the breach

of Y.'s contract, and, if the damages equaled or exceeded the amount of the mortgage, to wholly defeat a foreclosure thereof.

### Same—Other Action Pending—Inconsistent Remedy.

*Held*, that its right to make such defense was not affected by the fact that it had previously commenced an action—which was still pending—against Y. to recover damages for a breach of his contract; it not appearing that the assignee acquired the mortgage after the commencement of such action, or that he had changed his position, or parted with anything of value, by reason thereof.

### Same—Measure of Damages—Difference in Value of Land with and without Full Performance.

*Held*, that the measure of plaintiff's damages was the difference in the value of its land with the contract performed to the extent it was, and what the value of the land would have been if there had been a complete performance of the contract.

### Same—Opinion Evidence.

Opinion evidence by qualified witnesses is competent as to what the value of the land would have been if the contract had been completely performed.

Appeal by defendant York from an order of the district court for St. Louis county, Cant, J., denying a motion for a new trial and also denying a motion for additional findings of fact. Reversed.

*Washburn, Lewis & Bailey,* for appellant.

The complaint states no cause of action against defendants. The cancellation of the subscription was the consideration for the mortgage, and the subscription having been cancelled there is no failure of consideration. In order that the nonperformance of an agreement may constitute failure of consideration of commercial paper, the agreement must not be collaterally or remotely connected with the paper, as the agreement cannot then be considered part of the consideration and its nonperformance cannot affect the paper. Tiedeman, Com. Paper, § 204. Where the consideration for a note is the payee's executory agreement, failure to perform is not failure of consideration, and is no defense. A distinction exists between the case where performance on both sides is to be concurrent, and the case where performance by the payee is to be executory. The rule of damages would be different, for in the case of the executed

contract, as the conveyance of an estate upon the payment of a sum of money, the damages might be the consideration paid. In the case of the executory contract the damages would be the value of the thing to be done by the payee at the time performance on his part was due. 1 Parsons, Bills & N. 203, note Z; Spiller v. Westlake, 2 B. & A. 155; Trask v. Vinson, 20 Pick. 105; Moggridge v. Jones, 14 East, 486; Freligh v. Platt, 5 Cow. 494; Chapman v. Eddy, 13 Vt. 205.

The cases which hold that failure to perform a contract constitutes failure of consideration and may be set up against a note come under one of the three following propositions: (1) Cases where it is found there was total failure of consideration and the court held the contract could be rescinded and the consideration recovered. (2) Where the note was delivered upon condition that certain things should be done and the conditions were not fulfilled. (3) Where the delivery of the note and the thing agreed to be done were to be concurrent acts and there was a failure to perform the agreement. None of the above propositions are in point. Where at the time of conveyance the defendant has fully performed his obligations up to that point, and some subsequent default occurs, it is not failure of consideration, but may on proper cause and on proper showing subject the defaulting party to an action for damages. 2 Sutherland, Dam. § 546; Clough v. Baker, 48 N. H. 254; Dodge v. McClintock, 47 N. H. 383. There are, it is true, some cases which hold that where a party has wholly failed to perform, such failure may be taken advantage of as a defense by the payor of a note on the ground of a rescission of the contract. These cases are not in point. As the agreements of the steel company and James E. York are executory, even admitting for the sake of argument that the consideration for the note and mortgage were connected with the consideration for the original contract, the plaintiff had the choice of two absolutely inconsistent remedies: (1) To consider the note and mortgage as payment on its part and bring an action at law in damages, or (2) if it could maintain that there had been a total failure of consideration, to rescind the contract, and defend against the note and mortgage on the ground of total failure of consideration. The plaintiff elected to pursue the former course by com-

mencing an action in damages. A party cannot proceed at law and equity on the same cause of action and state of facts. Hunter v. Holmes, 60 Minn. 496; 3 Wait, Act. & Def. 178. Bringing an action for damages is such an election of remedies that a party cannot afterwards sue for rescission, and the election is irrevocable. 3 Enc. Pl. & Pr. 368; Marshall v. Gilman, 52 Minn. 88; In re Van Norman, 41 Minn. 495; Johnson v. Missouri, 52 Mo. App. 407; Moller v. Tuska, 87 N. Y. 166; Terry v. Munger, 121 N. Y. 161; Fowler v. Bowery Bank, 113 N. Y. 450; Crossman v. Universal, 127 N. Y. 34; Conrow v. Little, 115 N. Y. 387. The parties in the case at bar cannot be placed in statu quo. Carlson v. Segog, 60 Minn. 498; Hunter v. Holmes, supra.

The contract was substantialy performed by York and the steel company, and hence the mortgage cannot be set aside for failure of consideration. Hunter v. Holmes, supra; Carlson v. Segog, supra; Handforth v. Jackson, 150 Mass. 149; Leeds v. Little, 42 Minn. 414. Plaintiff failed to prove damages by competent evidence or otherwise. If plaintiff sought to rescind and recover the consideration, it has made no case, since the contract could not be rescinded, because there had been a performance and the parties could not be placed in statu quo. If it sought to prove damages for breach of contract, it has failed, for the only damage it attempted to prove was the difference in value of its land without any steel plant and with the contract fully performed. The plaintiff cannot escape from this rule of damages on any such technicality as the entirety of the contract. Coos v. Dixon, 30 Ore. 584. Where the consideration is of some value, plaintiff cannot recover the money paid upon account of failure of consideration, and where a part of what was contracted for has been received, the court will presume it to have been a benefit and to be the consideration. Bedford v. Small, 31 Minn. 1. The damages are too remote and speculative to allow recovery. O'Neill v. Johnson, 53 Minn. 439; Rockford v. Beckemeier, 72 Ill. 267; Boston v. County, 1 Allen, 324; 1 Sutherland, Dam. § 111; Wolcott v. Mount, 36 N. J. L. 262, 271; Carbondale v. Burdick, 58 Kan. 517; Doe v. Rowlands, 9 C. & P. 734; 2 Sutherland, Dam. § 481; Hudson v. Archer, 9 S. D. 240; Whitely v. Mississippi W. P. & B. Co., 38 Minn. 523.

The opinion evidence was incompetent. Where conditions on which witness is asked to give an opinion do not exist, and never have existed, he cannot give an opinion as to what the value of property would have been if such conditions had existed. Roberts v. New York, 128 N. Y. 455; Jefferson v. New York, 132 N. Y. 483; Gray v. Manhattan, 128 N. Y. 499, 509; Tribune v. Bradshaw, 20 Ill. App. 1; Connoble v. Clark, 38 Mo. App. 476. The damages did not admit of trustworthy computation. Coos v. Dixon, supra; Bell v. Reynolds, 78 Ala. 511; Bernstein v. Meech, 130 N. Y. 354; Stevens v. Yale, 113 Mich. 680.

*A. A. Harris, Henry E. Harris* and *Marion Douglas*, for respondent.

The complaint stated a cause of action. The failure to perform constituted a failure of consideration. Where the consideration for a note is the performance of an agreement, its nonperformance constitutes, in whole or in part, a failure of consideration, and operates as a good defense to the note. Tiedeman, Com. Paper, §§ 338, 339, and cases cited; Stevens v. Johnson, 28 Minn. 172; Torinus v. Buckham, 29 Minn. 128; Durment v. Tuttle, 50 Minn. 426; Burns v. Jordan, 43 Minn. 25; Bisbee v. Torinus, 26 Minn. 165; Massachusetts L. & T. Co. v. Welch, 47 Minn. 183. The damages were correctly measured within the rules in Hadley v. Baxendale, 9 Exch. 341; Alder v. Keighley, 15 M. & W. 117; 1 Sutherland, Dam. § 50; 1 Sedgwick, Dam. § 160; Paine v. Sherwood, 21 Minn. 225, 239; Mississippi & R. R. B. Co. v. Prince, 34 Minn. 71. It is not necessary that the damages be shown with absolute certainty. Reasonable certainty is all that is required. Mississippi & R. R. B. Co. v. Prince, supra; Cargill v. Thompson, 57 Minn. 534; Blagen v. Thompson, 23 Ore. 239; Watterson v. Allegheny, 74 Pa. St. 208; Louisville v. Sumner, 106 Ind. 55; Fraley v. Bentley, 1 Dak. 25. Evidence as to damages based on the value of the property September 15, 1894, was proper, since that was the date when the plant was to be completed. The engagement to construct and operate was absolute. Stees v. Leonard, 20 Minn. 448 (494); Cowley v. Davidson, 13 Minn. 86 (92); Anderson v. May, 50 Minn. 280; Paine v. Sherwood, supra. Time was of the essence of the contract. It is always so in the case of bonus contracts. Cowley

v. Davidson, supra; Cincinnati v. Bensley, 2 C. C. A. 485, and cases cited. The contracts are to be strictly construed, and the respondent was at least entitled to an actual completion of the plant by September 15, 1894. Cincinnati v. Bensley, supra; Memphis v. Thompson, 24 Kan. 170; Elliott v. Caldwell, 43 Minn. 357. The opinion evidence was competent. Goodell v. Ward, 17 Minn. 1 (17); Simmons v. St. Paul & C. Ry Co., 18 Minn. 168 (184); Lehmicke v. St. Paul, S. & T. F. R. Co., 19 Minn. 406 (464); Curtis v. St. Paul, S. & T. F. R. Co., 20 Minn. 19 (28); Austrian v. Davidson, 21 Minn. 121; Cedar Rapids, I. F. & N. Ry. Co. v. Ryan, 36 Minn. 546; Sigafoos v. Minneapolis, L. & M. Ry. Co., 39 Minn. 8.

Bringing an action against the steel company and James E. York to recover damages for breach of contract was not a bar to this action. Appellant York took the note and mortgage before the commencement of that action, and he did not change his position toward them nor part with anything of value in connection with them after the action for damages was brought. Miller v. Hyde, 161 Mass. 472. The case was not tried; it never went to judgment; respondent's rights to damages were never extinguished. The remedies sought there and here are not inconsistent. Smith v. Carlson, 36 Minn. 220; Bjork v. Bean, 56 Minn. 244; Miller v. Hyde, supra; Fabbricotti v. Launitz, 3 Sanf. 743; Naylor v. Schenck, 3 E. D. Smith, 135; Wiltsie v. Northam, 3 Bosw. 162.

START, C. J.

The defendant Levi D. York, a resident of the state of Ohio, as the assignee of a mortgage for $27,733.22 made by the plaintiff, commenced proceedings to foreclose the mortgage by advertisement. Thereupon the plaintiff commenced this action against York and the defendant Butchart, as sheriff, to restrain such foreclosure, on the ground that the consideration for the mortgage had failed, whereby the plaintiff had sustained damages in a sum exceeding the amount of the mortgage. The defendant York appeared, and in his answer, after putting in issue a part of the allegations of the complaint, and alleging the pendency of a former action, by way of counterclaim or cross bill, set forth the mortgage, and the note secured by it, and asked for a foreclosure of the mortgage, a sale of the mortgaged premises, and that the plaintiff be adjudged to pay

the deficiency. The plaintiff answered the cross bill by setting up substantially the same facts stated in the complaint. The trial court found that the consideration for the mortgage had failed, and that the plaintiff had sustained damages thereby in the sum of $35,000,—a sum exceeding the amount of the mortgage,—and ordered judgment dismissing the cross bill, and canceling the note and mortgage. The defendant York appealed from an order denying his motion for a new trial.

It is necessary, for an intelligent consideration of the errors assigned by defendant, to state here concisely the facts as to the making of the mortgage, and the alleged failure of the consideration therefor. On and prior to May 26, 1891, the plaintiff was the owner of a tract of land, embracing 165 acres, near Ironton, St. Louis county, which tract had been platted into blocks and lots; and the plaintiff was desirous of procuring the establishment and operation of a manufacturing plant for the making of structural steel and iron upon or near its land, for the purpose of increasing the value and the sale of its lots. For this purpose the plaintiff, in connection with the St. Louis Bay Land Company, on the day named entered into the contract, a copy of which is attached to the complaint in this action, with James E. York, whereby it was agreed that the plaintiff and the Bay Land Company should pay to York, or to a corporation to be organized by him, to be known as the Ironton Structural Steel Company, as a bonus for establishing and operating such a plant, the sum of $125,000, of which the plaintiff was to contribute $50,000, and the Bay Land Company the balance, and each convey also ten acres of land, as a site for the plant, to the corporation; the deeds therefor to be placed in escrow, and delivered to it upon the completion of the plant ready for operation. The cash bonus was to be paid as calls were made for it. The amount of each call was $7,500 for the Bay Land Company, and $5,000 for the plaintiff. The calls were not to be made oftener than once in 30 days. York, on his part, agreed: To erect on the lands to be conveyed by the two land companies,

"Buildings and appurtenances, together with the machinery and appliances suitable and proper for the manufacture of structural steel and iron, which structures, machinery and appliances shall,

when finished and operated at its full capacity, constitute a plant for said purposes, with a capacity to employ for its proper operation five hundred (500) employees, * * * and produce one hundred (100) tons of structural steel and iron products per day. The general nature of the principal products to be produced to be girders or beams, and such material as enters into the construction of iron and steel bridges, roofs, fireproof buildings, elevated railroads, and kindred structures and industries." To complete the works "in all particulars, with machinery in place, and ready for operation for the production of materials, kinds and amounts as above named, on or before August 1st, 1892, * * * and maintain and operate said works or cause them to be maintained and operated continuously for the period of two years from the time the said works are completed, and to the fullest capacity which the conditions of trade will permit." "To furnish one hundred and twenty-five thousand dollars ($125,000) in money towards the construction of the said works, and the furnishing and placing the machinery therein; such money to be furnished as hereinafter provided." To form "a corporation under the laws of the state of Minnesota, by the corporate name of the Ironton Structural Steel Company, * * * to which corporation the party of the first part [York] will assign this contract; * * * but such assignment shall not be construed to release or in any way modify the personal liability of said party of the first part for the performance of the terms of this contract."

The corporation, the Ironton Structural Steel Company, was organized, and assumed the obligations of York's contract with the land companies; and they on January 13, 1892, entered into a further contract with the steel company, by which the time for the completion of the plant was extended to November 15, 1893; and the time was afterwards extended to September 15, 1894. Prior to March 29, 1893, the plaintiff had paid to the steel company all of the cash bonus, except $27,733.22, and had, at its request, conveyed to it the ten acres of land so agreed to be conveyed as a site for its plant. On the day last named the plaintiff executed its note to S. B. Houpt, for the use and benefit of the steel company, for $27,-733.22, the balance of the cash bonus, due in three years, with interest at 7 per cent. per annum and secured the payment of the note by a mortgage to Houpt on its lands, which the defendant seeks to foreclose in this action.

This mortgage and note passed by successive assignments to the steel company, to James E. York, and finally to the defendant Levi

D. York. Each of the Yorks at the time he respectively so acquired the note and mortgage had full notice of the consideration for which they were given, and that the contract for the establishment and operation of the structural steel and iron plant had not been fulfilled. York knew at the time of entering into the contract with the plaintiff that the purpose of making the contract on its part was to enhance the value and to increase the sale of its remaining lots by the establishment and operation of the plant.

The trial court found that there was a substantial failure on the part of James E. York and the steel company to perform the contract on their part, and that the consideration for the agreement on the part of the plaintiff, and for the cash payment on the agreed bonus by it, and the note and mortgage to secure the balance of the bonus, had failed, and that the plaintiff's damages exceeded the amount due on the mortgage. The undisputed evidence tends to show that the steel company did not wholly fail to perform the contract on its part; but, on the contrary, it tends to show that the steel company proceeded with the work of erecting the agreed plant, and before September 15, 1894, it had erected on the designated site a rolling mill 400 by 100 feet, a working and finishing building 225 by 60 feet, a boiler-house plant 120 by 60 feet, a gas-producer house 80 by 60 feet, all of which buildings were of brick and stone, and placed therein a general equipment of machinery pertaining to such a plant, and in so doing expended some $300,000 or more.

1. The defendant's first claim is that the complaint does not state a cause of action. This contention seems to rest upon the assumption that this action was brought for a rescission of the original contract with York and a cancellation of the note and mortgage. When all the allegations of the complaint are considered together, it fairly appears that the cause of action is based upon a failure of the consideration for which the mortgage was given, whereby the plaintiff had sustained damages in an amount in excess of the amount due on the mortgage, which it claimed the right to set off against the amount due on the mortgage, and thereby defeat the proceedings to foreclose it by advertisement. The defendant, however, abandoned his proceedings to foreclose the mortgage by advertisement when he appeared in this action, and filed his cross bill

or complaint for the foreclosure of his mortgage. The answer to this cross complaint alleged as a defense, substantially, the facts pleaded in the original complaint. This action, then, for all practical purposes, became one to foreclose the mortgage; and the practical question is, does the answer to the cross bill state a defense?

If we understand the claim of the defendant, it is that the note and mortgage were given in payment of the bonus subscription, which was thereby canceled; that such cancellation was the consideration for the mortgage, and, as there is no claim that the subscription was not canceled, therefore there was no failure of the consideration; hence neither the complaint nor the answer to the cross bill states any defense to the foreclosure of the mortgage. It seems to be a very obvious proposition that the mortgage was given in payment of the bonus, and that the latter was promised upon the consideration that the steel plant should be erected, equipped and operated according to the contract; and if the consideration for the promise to pay the bonus has failed, in whole or in part, the consideration for the mortgage has also failed to the same extent. If no mortgage had been given, and the bonus subscription assigned to the defendant, and this was an action to collect it, the facts alleged in the answer to the cross bill herein would certainly constitute a defense.

The case of Massachusetts L. & T. Co. v. Welch, 47 Minn. 183, 49 N. W. 740, is decisive of the proposition that the facts alleged in plaintiff's complaint and reply or answer to the cross bill constitute a defense to the foreclosure proceedings herein. In that case the defendant purchased of the thresher company a separator, and, to secure the purchase price thereof, executed to the thresher company a chattel mortgage, which was afterwards assigned to the trust company, which brought the action to foreclose the mortgage. The defendant answered that the consideration for the mortgage had failed, in that the separator, which was the only consideration for the mortgage, was warranted; that there was a breach thereof, whereby he sustained damages in an amount exceeding the amount for which the mortgage was given. This defense was sustained on appeal to this court.

2. It is substantially admitted by the pleadings that before the commencement of this action the plaintiff commenced an action against James E. York and the steel company to recover damages for the breach of their contract to erect and operate the plant in question, and that such action is still pending. The defendant claims that the bringing of this action was an irrevocable election to pursue an inconsistent remedy, and that the plaintiff cannot be heard, in this action, to urge a failure of consideration of the mortgage. If, as the defendant claims, the defense to the foreclosure in this care rested upon a rescission of the contract, it would be necessary to consider this question; but, as already stated, such is not this case. The defendant is not a party to the other action, and there is no claim that he purchased the mortgage after the former action was commenced, or that he has ever changed his position, or parted with anything of value, by reason thereof. The bringing and pendency of the former action do not affect the plaintiff's right to defend this action to foreclose the mortgage. See Smith v. Carlson, 36 Minn. 220, 30 N. W. 761.

3. The steel company and James E. York knew that the inducement and consideration for the plaintiff to enter into the contract for the erection and operation of the manufacturing plant were to increase the value and the sale of its remaining lands. The appreciation in the value of such lands by the erection and operation of the plant was within the legal contemplation of the parties to the contract; hence the measure of the plaintiff's damages for the breach of the contract so to erect and operate the plant was the increased value that would have accrued to its lands if the other parties to the contract had fully performed on their part, which it lost by their failure to perform. Such increase in value to its lands was the thing the plaintiff bargained for, and, if it has lost it by the breach of the contract, such loss would be the direct result of the breach, and within the settled rules of this court for measuring damages for a breach of contract,—following Hadley v. Baxendale, 9 Exch. 341; Paine v. Sherwood, 21 Minn. 225; Day v. Gravel, 72 Minn. 159, 75 N. W. 2; Cargill v. Thompson, 57 Minn. 534, 59 N. W. 638; Watterson v. Allegheny, 74 Pa. St. 208; Blagen v. Thompson, 23 Ore. 239, 31 Pac. 647. If there was a total breach of the contract

73 M.—4

in question, the measure of the plaintiff's damages would be the difference between the value of its remaining lands without anything of substantial benefit to the lands having been done in performance of the contract, and what their value would have been if the plant had been erected and operated as required by the contract.

The defendant, however, claims (and such is the case) that all the evidence received as to the damages was upon the basis of a total breach of the contract, and that the trial court assessed the damages on that basis. The opinion evidence given as to the relative value of plaintiff's land with and without a complete performance of the contract was upon the assumption that no plant had been constructed, and nothing done under the contract. But, as already stated, the undisputed evidence showed that the steel company did substantially perform the contract in part, and to the extent we have indicated. To the extent that this substantial part performance increased the value of plaintiff's land, it received a consideration for its bonus, and equitably this increase, if any, must be taken into account in assessing the damages. See Sykes v. City of St. Cloud, 60 Minn. 442, 62 N. W. 613; Hunter v. Holmes, 60 Minn. 496, 62 N. W. 1131; and Carlson v. Segog, 60 Minn. 498, 62 N. W. 1132.

The plaintiff claims that this is not the proper measure of its damages in this case, because the contract was an entire one, and that there can be no recovery for its part performance. But the entirety of the contract, if such it be, is not the defense upon which the respondent stood on the trial, whatever may be the allegations of its pleadings. It sought on the trial to defeat a foreclosure of the mortgage, and to secure an extinguishment of it and the note in the hands of an assignee with notice, by showing that its damages for the nonperformance of the contract which was the consideration for them equaled or exceeded the amount due thereon. The appellant was not seeking to recover for a part performance of the contract. When he produced the note and mortgage, he made a prima facie case; and the respondent attempted to overcome it by proving the damages it had sustained by reason of the nonperformance of the contract, and in doing so its damages should have been ascertained upon an equitable basis. If its defense had been that the contract was an entire one, and had not been performed, and

hence there was a total failure of the consideration for the mortgage, the claims of the respondent as to the entirety of the contract would have to be considered; but the course of the trial renders it unnecessary for us to pass upon them.

The measure of plaintiff's damages is the difference between the value of its lands, taking into consideration all that was done by the steel company in performance of the contract, and what the value of the lands would have been if the steel company had fully performed all of the terms of the contract on its part. Such difference will represent the plaintiff's loss by the failure of the steel company completely to perform the contract. The loss must not be remote nor speculative nor contingent, but direct, and shown with reasonable certainty to have been caused by the breach of the contract. Absolute certainty is not required, and the loss may be established by the best evidence the case admits of. Mississippi & R. R. B. Co. v. Prince, 34 Minn. 71, 24 N. W. 344.

Opinion evidence, by qualified witnesses, is competent as to the value of the plaintiff's lands with the contract performed to the extent it was, and what they would have been worth if the contract had been fully performed in accordance with all of its terms. This case, in this respect, is analogous to cases in which this court has held that opinion evidence is competent to show how much the rental value of a farm abutting on a railway right of way is diminished by the failure of the railroad company to fence the right of way, and similar to cases where the damages for railway right of way are assessed in advance of construction, in which it has been held that opinion evidence was competent to show the difference in the value of the land with and without the railway constructed across it as proposed. Emmons v. Minneapolis & St. L. Ry. Co., 41 Minn. 133, 42 N. W. 789; Minnesota B. L. Ry. & T. Co. v. Gluek, 45 Minn. 463, 48 N. W. 194.

As there must be a new trial for the error of the trial court as to the measure of the plaintiff's damages, and the basis upon which they must be assessed, we do not deem it necessary to pass upon the other assignments of error not covered by what has already been said.

Order reversed, and new trial granted.